1   Barrett S. Litt, SBN 45527
2   Email: blitt@kmbllaw.com
    Ronald O.  Kaye, SBN 145051
3   Lindsay B. Battles, SBN 262862
4   KAYE, McLANE, BEDNARSKI & LITT
    234 East Colorado Blvd, Suite 230
5   Pasadena, California 91101
    Telephone: (626) 844-7660
6   Facsimile: (626) 844-7670
7
    Attorneys for Plaintiffs
8

9

10

11                      UNITED STATES DISTRICT COURT

12                     CENTRAL DISTRICT OF CALIFORNIA

13
    FRANK O'CONNELL, NICHOLAS          CASE NO. 13-01905-MAN
14  O'CONNELL,
15                                     [HONORABLE MICHAEL W.
                    Plaintiffs,        FITZGERALD]
16
17            vs.                      PLAINTIFFS' OPPOSITION TO
                                       DEFENDANT ERIC PARRA'S
18  J.D. SMITH; ESTATE OF              AND DEFENDANT J.D. SMITH'S
19  GILBERT PARRA; ERIC PARRA;         MOTION FOR JUDGMENT ON
    COUNTY OF LOS ANGELES AND          THE PLEADINGS
20  DOES 1-10
21                                     Date:      September 23, 2013
                    Defendants.        Time:      10:00 a.m.
22                                     Courtroom: 1600
23

24

25

26

27

28

1

TABLE OF CONTENTS

2

3

I.    INTRODUCTION.....................................................................................1

II.   FACTS ....................................................................................................2

4

III.  DEFENDANTS ARE NOT ENTITLED TO QUALIFIED IMMUNITY .......4

5       A.  The Ninth Circuit Has Already Determined That, As Early As
            1979 – 1980, It Was Clearly Established that *Brady* Prohibits Police
6           Officers from Suppressing Material, Exculpatory Evidence......................4

7
        B.  *Brady v. Maryland* Established that the Suppression of Material,
8           Exculpatory Evidence Violates the Right to a Fair Trial............................5

9           1.  Police Officers Have Always Been Subject to the Constitutional
                Obligations Imposed by Brady ............................................................8

10

11      C.  *Kyles v. Whitney* Did Not Recognize for the First Time That *Brady*
            Imposes Obligations on Police Officers .....................................................11

12

13      D.  Most Circuits to Have Examined the Issue Concur that by 1984/1985
            It Was Cleary Established That Police Officers' Suppression of Material,
14          Exculpatory Evidence Violates *Brady*......................................................15

15

16   IV.  CLAIMS AGAINST ERIC PARRA ARE NOT TIME BARRED .................19

        A.  Plaintiff May Assert Claims Directly Against The Estate Of Gilbert Parra
17          Under Probate Code §550 ...........................................................................20

18
        B.  Even If §550 Does Not Apply, Claims Against Eric Parra Are Not
19          Time-Barred Or Otherwise Precluded ........................................................22

20

21   V.  CONCLUSION.............................................................................................25

22

23

24

25

26

27

28

i

# TABLE OF AUTHORITIES

## FEDERAL CASES

*ActUp!/Portland v. Bagley*
   988 F.2d 868 – 872 (9th Cir. 1993) ..................................................... 13

*Barbee v. Warden*
   331 F.2d 842 (4th Cir. 1964) ........................................................... 8, 17

*Boyd v. Benton City*
   374 F.3d 773 (9th Cir. 2004) ........................................................... 6, 18

*Brady v. Maryland*
   373 U.S. 83 (1963) (hereafter "*Brady*") ......................................... passim

*Burnett v. Grattan*
   468 U.S. 42, 104 S. Ct. 2924 (1984 ............................................... 24, 25

*Calabretta v. Floyd*
   189 F.3d 808 (9th Cir. 1999) ........................................................... 9, 10

*California v. Trombetta*
   467 U.S. 479 ....................................................................... 11, 13, 14

*D'Ambrosio v. Marino*
   No. 11-933, 2012 WL 4504523 (N.D. Ohio Oct. 1, 2012) ................................ 18

*Fields v. Wharrie*
   672 F.3d 505 (7th Cir. 2012) ............................................................. 15

*Franks v. Smith*
   717 F.2d 183 (5th Cir.1983) .............................................................. 10

*Freeman v. Georgia*
   599 F.2d 65 (5th Cir. 1979) .......................................................... 13, 15

*Freeman v. State of Ga.*
   599 F.2d 65-71 (5th Cir. 1979), *cert. denied*, 444 U.S. 1013 (1980).................... 8

*Geter v. Fortenberry*
   849 F.2d 1550 (5th Cir. 1988)..................................................... 6, 15, 17

*Gibson v. Superintendent of N.J. Dept. of Law & Pub. Safety-Div. of State Police*
   411 F.3d 427 (3d Cir. 2005), *overruled on other grounds by Dique v. N.J. State Police*, 603 F.3d 181 (3d Cir. 2010 .......................................................... 16

*Giglio v. United States*
   405 U.S. 150, 92 S.Ct. 763 (1972) ........................................................ 13, 14, 15

*Goodwin v. Metts*
   885 F.2d 157 (4th Cir. 1989 ...................................................................... 15, 16

*Harris v. Cuba*
   486 F.3d 1010 (7th Cir. 2007) ................................................................... 16, 17

*Heck v. Humphrey*
   512 U.S. 477 (1994 ........................................................................................ 23

*Hopkins v. Boncicino*
   573 F3d 752 (9th Cir. 2009) ..................................................................... 4

*Hopkins v. Bonvincino*
   573 F.3d 752 (9th Cir. 2009) .................................................................. 6

*Imbler v. Craven*
   298 F. Supp. 795 (C.D. Cal. 1969), *aff'd sub nom. Imbler v. California*,
   424 F.2d 631 (9th Cir. 1970) ........................................................................ 7

*Inouye v. Kemna*
   504 F.3d 705 (9th Cir. 2007) ...................................................................... 17

*Jean v. Collins*
   221 F.3d 656 (4th Cir. 2000) (en banc) ................................................... 15, 16

*Jones v. City of Chicago*
   856 F.2d 985 (7th Cir. 1988) .................................................................. 7, 17

*Kyles v. Whitley*
   514 U.S. 419 (1995) .............................................................................. passim

*McMillian v. Johnson*
   88 F.3d 1554, *amended on other grounds on reh'g*, 101 F.3d 1363 (11th Cir. 1996) ............................................................................................... 15

iii

1
2

*Melear v. Spears*
862 F.2d 1777 (5th Cir. 1989) ........................................................................ 6

3

*Moldowan v. City of Warren*
578 F.3d 351 (6th Cir. 2009) ................................................................ passim

4
5

*Mooney v. Holohan*
294 U.S. 103 (1935) ................................................................................ 10, 11

6
7

*Moore v. Illinois*
408 U.S. 786 (1972) ...................................................................................... 13

8
9

*Moreta-Ramirez v. Lemert*
156 F. Supp. 2d 138 (D.P.R. 2001) .............................................................. 18

10
11

*Newsome v. McCabe*
256 F.3d 747 (7th Cir.2001) ............................................................. 5, 6, 17

12
13

*O'Donnell v. Brown*
335 F. Supp. 2d 787 (W.D. Mich. 2004) ...................................................... 10

14
15

*Pelayo v. City of Downey*
570 F.Supp.2d 1183 (C.D. Cal. 2008) .......................................................... 21

16
17

*Pyle v. Kansas*
317 U.S. 213 (1942) ...................................................................................... 10

18
19

*Rivero v. San Francisco*
316 F.3d 857 (9th Cir. 2002) ........................................................................ 18

20
21

*Smith v. Sec'y of New Mexico Dep't of Corr.*
50 F.3d 801 (10th Cir. 1995) ........................................................................ 11

22
23

*Steidl v. Fermon*
494 F.3d 623 (7th Cir. 2007) .......................................................................... 7

24
25

*Taylor v. Waters*
81 F.3d 429 (4th Cir. 1996) .......................................................................... 16

26

*Tennison v. City & County of San Francisco*
No. 04-0574-CW, 2006 WL 733470 (N.D. Cal. Mar. 22, 2006) ...................... 4

27
28

iv

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

*Tennison v. City and County of San Francisco*
  570 F.3d 1078 (9th Cir. 2009)................................................................1, 4, 5

*Tiscareno v. Anderson*
  639 F.3d 1016, *opinion vacated in non-pertinent part on reh'g*, 421 F.
  App'x 842 (10th Cir. 2011 ..............................................................................18

*U.S. ex rel. Smith v. Fairman*
  769 F.2d 386 (7th Cir. 1985) ...........................................................................8

*United States v. Bagley*
  473 U.S. 667 (1985) ........................................................................................13

*United States v. Butler*
  567 F.2d 885 (9th Cir. 1978) .........................................................7, 8, 15, 17

*United States v. Endicott*
  869 F.2d 452 (9th Cir. 1989) ...........................................................................7

*United States v. Hsieh Hui Mei Chen*
  754 F.2d 817 (9th Cir. 1985) ...........................................................................7

*United States v. Lanier*
  520 U.S. 259 (1997) ........................................................................................17

*United States v. Valenzuela-Bernal*
  458 U.S. 858 (1982) ........................................................................................13

*Walker v. City of New York*
  974 F.2d 293 (2d Cir. 1992) ...........................................................................16

*Walsh v. Erie Cnty. Dep't of Job & Family Servs.*
  240 F. Supp. 2d 731 (N.D. Ohio 2003) ..........................................................10

*White v. Pierce County*
  797 F.2d 812 (9th Cir.1986)..............................................................................9

*Wilson v. Garcia*
  471 U.S. 261, 105 S.Ct. 1938 (1985) ..............................................................24

*Wilson v. Layne*
  526 U.S. 603 (1999) ........................................................................................17

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

*Youngblood v. West Virginia*
    547 U.S. 867, 126 S.Ct. 2188, 165 L.Ed.2d 269 (2006) (per curiam) ................ 4

## OTHER CASES

*Aerojet-Gen. Corp. v. Transp. Indem. Co.*
    17 Cal. 4th 38 (Cal. 1997) ................................................................ 20

*Belz v. Clarendon America Ins. Co.*
    69 Cal.Rptr.3d 864 (Cal.App.2 Dist.2007) ........................................ 22

*in Interest of A.R.*
    937 P.2d 1037 (Utah App.1997) ...................................................... 10

*In re Estate of Yool*
    151 Cal. App. 4th 867 (2007) .................................................... 22, 23

*Neuland v. Russell*
    123 Cal.Rptr. 230 (Cal. App. 4 Dist. 1975) ...................................... 20

*Smith v. Interinsurance Exchange*
    167 Cal.App.3d 301 (Cal.App.4 Dist. 1985) .................................... 20

*Webster v. Superior Court*
    46 Cal. 3d 338 (1988) ................................................................ 20

## STATUTES

Government Code §825(a) ........................................................ 21, 22

Government Code §825 et seq. ...................................................... 20

Prob. Code §550 et seq. .......................................................... 20, 22

Prob. Code §550(a) .................................................................. 20

Prob. Code §554(a) .................................................................. 20

Prob. Code, §§709, 721 ............................................................. 20

Prob. Code §9392(a) ................................................................. 23

Prob. Code §§11429(b), 9053(b) .................................................... 23

Probate Code §550.............................................................................................passim

Probate Code §9000 et. seq. ............................................................................. 19

### CONSTITUTIONAL PROVISIONS

Fourteenth Amendment ...................................................................................... 11

Fourth Amendment ..................................................................................... 10, 18

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# I.     INTRODUCTION

In this §1983 lawsuit, Plaintiffs assert that LASD Detectives J.D. Smith and Gilbert Parra suppressed material, exculpatory evidence concerning the reliability of eyewitness identifications and possible alternate suspects, resulting in Frank O'Connell's 1985 murder conviction. In 2009, Mr. O'Connell's conviction was overturned on a writ of habeas corpus on the basis that material, exculpatory information had not been disclosed to the defense

Defendants do not dispute that suppression of material, exculpatory evidence violates criminal defendants' due process rights as articulated by *Brady v. Maryland*, 373 U.S. 83 (1963) (hereafter "*Brady*"). Defendants nevertheless contend that, in 1984/1985, there was an absence of clearly established law prohibiting police officers – as opposed to prosecutors – from suppressing exculpatory evidence. Defendants' argument hinges on the contention that *Brady* was not extended to police officers until the U. S. Supreme Court's 1994 decision in *Kyles v. Whitley*, 514 U.S. 419 (1995) (hereafter, "*Kyles*"). This argument lacks merit. In *Tennison v. City and County of San Francisco*, 570 F.3d 1078, 1087 (9th Cir. 2009), the Ninth Circuit determined that, by at least 1978 – 1979, clearly established law prohibited police officers from suppressing exculpatory evidence. *Tennison* is dispositive on this issue.

Even without *Tennison*, it was never a close question that *Brady* prohibits police officers from suppressing exculpatory evidence. *Brady* itself was sufficient to warn reasonable police officers that they would be subject to §1983 liability for suppressing, destroying or otherwise preventing the disclosure of material, exculpatory evidence. Further, long before *Tennison* and the 1984/1985 events in this case, the Ninth Circuit had expressly held that *Brady* prohibits the suppression of material exculpatory evidence known only to police.

Despite binding Ninth Circuit authority, Defendants insist that it was not clearly established that *Brady* "applied" to police officers or that police officers

were "bound by" *Brady* until *Kyles*. This argument is entirely specious. Police officers, like all government officials, have been subject to *Brady* since the decision was announced in 1963. Though qualified immunity requires that the right be clearly established, it does not require a case announcing that specific kinds of government officials are bound by constitutional rules.

Defendants' position rests heavily on the incorrect contention that, before *Kyles*, the Supreme Court's *Brady* jurisprudence focused exclusively on the responsibilities of prosecutors, as opposed to police. As the decision itself makes clear, *Kyles* did not expand *Brady* or enunciate new constitutional protections. It merely reiterated the uncontroversial proposition that suppression of exculpatory evidence known to the police, but not the prosecution, violates due process.

Defendants' arguments regarding Eric Parra also miss the mark. The dispositive issue is whether Plaintiff may pursue claims against Gilbert Parra's estate under Probate Code §550. Insofar as §550 applies, the statute of limitations issues are moot. The issues surrounding Prob. Code §550, claims filing requirements and statutes of limitations are complicated, cannot be resolved on a motion for judgment on the pleadings, and should be the subject of separate briefing. For the purpose of this motion, Plaintiffs summarize their arguments.

## II.  FACTS

On January 15, 1985, Frank O'Connell (hereafter, "Mr. O'Connell") was convicted of first degree murder in the death of Jay French, a crime for which he consistently and unwaveringly maintained his innocence since the day of his arrest. Mr. O'Connell was sentenced to 25 years to life imprisonment and remained incarcerated until a state court granted his petition for writ of habeas corpus in 2009. In this lawsuit, Mr. O'Connell claims that LASD homicide detectives, J.D. Smith and Gilbert Parra (deceased) (hereafter "detectives"), violated his due process right to a fair trial by failing to disclose exculpatory information regarding alternate suspects and the reliability of eyewitness identifications, including information

regarding suggestive procedures used during photo lineups administered by the detectives.[1] What follows is a summary of the facts supporting Plaintiffs' claims, which are set forth in detail in Plaintiffs' First Amended Complaint ("FAC").

The prosecution's case hinged on two eyewitnesses, Daniel Druecker and Maurice Soucy, both of whom made identifications from photo-spreads prepared and presented to them by the detectives. Detectives failed to disclose that they had improperly influenced these witnesses identification, misrepresented in police reports what those witnesses actually said even after they were improperly influenced, and failed to disclose that they had done so. Such disclosure would have virtually negated any weight afforded to the eyewitnesses' testimony, eviscerating the prosecution's case, and changing the outcome of the verdict. FAC, pp. 7 – 14.

Detectives also failed to disclose critical, exculpatory information regarding possible alternate suspects. Their 1984 – 1985 murder investigation revealed that Jay French's ex-wife and a male associate named Randy Smith had allegedly made a previous attempt on Mr. French's life. Police further knew that the male associate matched eyewitnesses' general description of the person who killed Jay French, strongly suggesting an alternative suspect and directly implicating his former wife. Detectives did not forward this information to prosecutors, who accordingly could not disclose it to Mr. O'Connell's defense counsel. This information alone, would have been sufficient to change the outcome of the trial. FAC, pp. 14, 15.

Mr. O'Connell's conviction was reversed on March 29, 2012 when a state court granted his petition for a writ of habeas corpus. Mr. O'Connell was released on bail on April 21, 2012. The DA declined to re-prosecute and, on June 11, 2012, all charges were dismissed. Very strong evidence uncovered during Plaintiff's habeas investigation shows that Mr. O'Connell had no involvement with the murder

---

[1] Plaintiffs assert various additional theories of liability, including but not limited to, violation of Mr. O'Connell's due process rights by way of suggestive eyewitness identification procedures, reckless investigation, and fabrication of evidence.

1    and that the crime was orchestrated by Mr. French's ex-wife, Jeanne Lyon. FAC,

2    pp. 17 – 19. Mr. O'Connell and his son, Nicholas O'Connell, now seek

3    compensation for Defendants' unconstitutional conduct.

4    **III.    DEFENDANTS ARE NOT ENTITLED TO QUALIFIED IMMUNITY**

5            To determine whether a particular right was clearly established at the time of

6    the inquiry, Ninth Circuit courts begin their inquiry by looking to binding

7    precedent. "<u>If the right is clearly established by decisional authority by the Supreme</u>

8    <u>Court or the Ninth Circuit, the inquiry comes to an end</u>." *Hopkins v. Boncino*, 573

9    F3d 752, 772 (9th Cir. 2009) (citing *ActUp!/Portland v. Bagley*, 988 F.2d 868, 871 –

10   872 (9th Cir. 1993).

11           A.    **THE NINTH CIRCUIT HAS ALREADY DETERMINED THAT, AS EARLY
12                 AS 1979 – 1980, IT WAS CLEARLY ESTABLISHED THAT *BRADY*
13                 PROHIBITS POLICE OFFICERS FROM SUPPRESSING MATERIAL,
                   EXCULPATORY EVIDENCE**

14           In *Tennison v. City & County of San Francisco*, 570 F.3d 1078, 1087 (9th

15   Cir. 2009), the Ninth Circuit squarely rejected police officers' assertion of qualified

16   immunity based on the incorrect contention that *Brady* imposed a disclosure duty

17   on prosecutors but not on police officers. [2] The Ninth Circuit concluded that the law

18   regarding police officers' obligations under *Brady* was clearly established before

19   *Tennison*'s 1989 prosecution.[3] As *Tennison* explained:

20                "The [police officer defendants'] position also is untenable in light of
21           the Supreme Court's admonition that "*Brady* suppression occurs when the
             government fails to turn over even evidence that is 'known only to police
22           investigators and not to the prosecutor.' " *Youngblood v. West Virginia,* 547

23

24   [2] The murder and investigation at issue in *Tennison* took place in 1989; the plaintiffs were
25   convicted at trial in 1990; they were released in 2003. *Id.* at 1084; *Tennison v. City &
     County of San Francisco*, No. 04-0574-CW, 2006 WL 733470, at *1-2 (N.D. Cal. Mar.
26   22, 2006).
     [3] Defendants repeatedly assert that the Ninth Circuit did not address this issue until
27   *Tennison* was decided in 2009. The year of the *Tennison* decision is completely
     immaterial to qualified immunity analysis. The question is not when the first §1983 case
28   addressed qualified immunity, but rather, when federal authority delineated the right.

U.S. 867, 869-70, 126 S.Ct. 2188, 165 L.Ed.2d 269 (2006) (per curiam) (quoting *Kyles v. Whitley,* 514 U.S. 419, 438, 115 S.Ct. 1555, 131 L.Ed.2d 490 (1995)); *see also, e.g., Newsome v. McCabe,* 256 F.3d 747, 752-53 (7th Cir.2001) (stating that it was clearly established in 1979 and 1980 that police could not withhold exculpatory information about fingerprints and the conduct of a lineup from prosecutors). We accordingly reject this argument."

*Tennison*, 570 F.3d at, 1087 (9th Cir. 2009) (emphasis added).

*Tennison* does not state precisely when the law became clearly established, but it strongly indicates that it was clearly established by *Brady* in 1963. *Tennison* specifically cited *Newsome v. McCabe*'s conclusion that the law was clearly established before 1979/1980, *Id.*; *Newsome* explicitly based this conclusion on the fact that *Brady* was decided in 1963. *Newsome*, 256 F.3d at 753. In other words, *Newsome* determined that *Brady* itself clearly established that police suppression of exculpatory evidence violates due process. Considering *Tennison*'s reference to *Newsome*, *Tennison* establishes that, in this Circuit, the police obligation to disclose exculpatory evidence was established at least by 1979-80, if not by 1963.

At a minimum, *Tennison* stands for the proposition that the law was clearly established prior to the U.S. Supreme Court's 1995 decision in *Kyles* and therefore was established by decisions predating *Kyles* (which logically means by *Brady*). , *Tennison* could not have denied qualified immunity to police officers accused of suppressing evidence in 1989/1990 if the law was only clearly established by *Kyles*.

**B. *BRADY V. MARYLAND* ESTABLISHED THAT THE SUPPRESSION OF MATERIAL, EXCULPATORY EVIDENCE VIOLATES THE RIGHT TO A FAIR TRIAL**

Even without *Tennison*, it has never been a close question that the suppression of exculpatory evidence by police officers violates a criminal defendant's *Brady* rights to the same degree as prosecutorial suppression. Under *Brady*, an accused is denied a fair trial by the state when material, exculpatory evidence is suppressed.

5

1    It is self-evident that exculpatory evidence cannot be disclosed to the defense

2    if it is destroyed or suppressed by police before it reaches the prosecutor. Because

3    the causal nexus is so obvious, police officers would not be entitled to qualified

4    immunity for suppressing exculpatory evidence even if no binding federal authority

5    had specifically explained that police *cause* a *Brady* violation to occur when they

6    prevent exculpatory information from being turned over to the defense.[4] *See*

7    *Devereaux,* 263 F.3d at 1075 ("a right can be clearly established on the basis of

8    common sense"); *Moldowan v. City of Warren*, 578 F.3d 351, 378 (6th Cir. 2009)

9    ("…the obligations imposed under *Brady* would be largely ineffective if those other

10   members of the prosecution team had no responsibility to inform the prosecutor

11   about [exculpatory] evidence…As a practical matter then, [due process] demands

12   that *Brady*'s protections also extend to actions of other law enforcement officers

13   such as investigating officers.") (internal citations omitted).

14   Thus, several circuit court have expressly held that *Brady* itself clearly

15   establishes that police officers may not suppress material, exculpatory evidence.

16   *Geter v. Fortenberry*, 849 F.2d 1550, 1559 (5th Cir. 1988) (*Brady* establishes that

17   police officers may not conceal exculpatory evidence); *Newsome v. McCabe*, 256

18   F.3d at 752-53 (7th Cir. 2001) ("The *Brady* principle was announced in 1963, and

19   we applied it in *Jones* to affirm a hefty award of damages against officers who

---

21   [4] The very language of §1983 makes clear that a basis for liability exists where

22   government officials commit or **cause** a constitutional violation. While the qualified

23   immunity doctrine requires that the right be clearly established, it does not require previous authority explaining obvious ways in which government officials may cause or help cause a violation of that right. The second prong of qualified immunity analysis –

24   whether a right is clearly established – does not address, and is entirely separate from, analysis as to whether the defendant's participation was sufficient to support §1983

25   liability. This is demonstrated by numerous qualified immunity cases that separately

26   consider (1) whether a defendant's participation in violating a constitutional right was sufficient to support §1983 liability, and (2) whether the **right** itself was clearly

27   established. *See e.g., Boyd v. Benton City*, 374 F.3d 773, 780 (9th Cir. 2004); *Hopkins v. Bonvincino*, 573 F.3d 752, 769-71 (9th Cir. 2009); *Melear v. Spears*, 862 F.2d 1777 (5th

28   Cir. 1989).

6

1  withheld exculpatory information in 1981."); *Steidl v. Fermon*, 494 F.3d 623, 628

2  (7th Cir. 2007) ("The proposition that it is unconstitutional for law enforcement

3  officers to withhold or suppress exculpatory evidence finds its roots in *Brady* ...[,

4  which] easily qualifies as clearly established law."); *Jones v. City of Chicago*, 856

5  F.2d 985, 995-96 (7th Cir. 1988) (deliberately concealing records from prosecutors

6  in clandestine files is unlawful attempt to circumvent *Brady*).

7          Regardless, this Court does not have to decide whether *Brady* itself

8  established that police may not suppress evidence because, in the years following

9  *Brady* (and well before 1984) federal courts, and specifically the Ninth Circuit, had

10 routinely held that a *Brady* violation occurs when the government suppresses

11 information maintained by police. In *United States v. Butler*, 567 F.2d 885, 889 (9th

12 Cir. 1978), the Ninth Circuit ruled that a *Brady* violation occurs where the

13 government fails to disclose material, exculpatory information maintained in police

14 files, irrespective of whether the information was known to the prosecutor. *Butler*

15 involved undisclosed promises to a key witness made by two law enforcement

16 agents (and allegedly a prosecutor). Even if the prosecutor had not been involved,

17 the agents' undisclosed promises were sufficient to deny the defendant due process:

18         "The prosecutor is responsible for the nondisclosure of assurances made to
19         his principal witnesses even if such promises by other government agents
20         were unknown to the prosecutor. Since the investigative officers are part of
           the prosecution, the taint on the trial is no less if they, rather than the
21         prosecutor, were guilty of nondisclosure."

22 *Butler*, 567 F.2d at 889 (citing *Giglio v. United States*, 405 U.S. 150, 154, 92 S.Ct.

23 763 (1972), and *Barbee v. Warden*, 331 F.2d 842, 846 (4th Cir. 1964), a seminal

24 Fourth Circuit case on this issue).[5] *See also*, *Imbler v. Craven*, 298 F. Supp. 795,

25 

26 _____

   [5] This conclusion has been affirmed by numerous, subsequent Ninth Circuit decisions. *See*
27 *e.g.*, *See  United States v. Endicott*, 869 F.2d 452, 456 (9th Cir. 1989) (non-disclosure of
   material, exculpatory evidence known only to government agents, and not to prosecutors,
28 can be the basis of a *Brady* violation); *United States v. Hsieh Hui Mei Chen*, 754 F.2d 817,
   824 (9th Cir. 1985) (*Brady* extends to "material contained in the government's files . . .

811 (C.D. Cal. 1969), *aff'd sub nom. Imbler v. California*, 424 F.2d 631 (9th Cir. 1970) ("no doubt that had [material, exculpatory] evidence . . . been deliberately suppressed by the police, even if the prosecuting attorney was not aware of its existence, due process would clearly have been violated.").

*Butler* quotes *Barbee*, 331 F.2d at 846 (4th Cir. 1964), which overturned a 1957 assault conviction due to police failure to disclose potentially exculpatory ballistics and fingerprint evidence and explained that "[f]ailure of the police to reveal … material evidence … is equally harmful to a defendant" whether done purposely, or negligently.'' It makes "no difference if the withholding is by officials other than the prosecutor. The police are also part of the prosecution" because the violation of defendant's rights is the same as if done by the prosecution.[6]:

Notwithstanding *Brady*, and *Butler* and the cases it cites, Defendants insist that, in 1984, there was an absence of controlling Ninth Circuit law as to whether police officers could suppress material, exculpatory evidence. This argument is meritless. If there was any doubt, *Butler* made clear that suppression of evidence by the police violates defendants' rights under *Brady*.

### 1. *Police Officers Have Always Been Subject to the Constitutional Obligations Imposed by Brady*

Remarkably, Defendants maintain that in 1984/1985 reasonable police officers would not have known that they were "bound by" or subject to *Brady*

---

[including] any information within the possession or control of law enforcement personnel").

[6] A multitude of circuit court cases mirror *Butler*. *See e.g., Freeman v. State of Ga.*, 599 F.2d 65-71 (5th Cir. 1979) (violation of due process when police conceal exculpatory or impeachment evidence;…"the policeman's conduct must be imputed to the state as part of the prosecution team," citing, *inter alia*, *Smith v. Florida*, 410 F.2d 1349, 1351 (5th Cir. 1969)), *cert. denied*, 444 U.S. 1013 (1980); *U.S. ex rel. Smith v. Fairman*, 769 F.2d 386 (7th Cir. 1985) (nondisclosure of firearms worksheet, which revealed that subject firearm was inoperable when tested by police ballistics expert the day following the offense and therefore created a reasonable doubt as to guilt, violated due process, *citing Brady* (1963) and *Agurs* (1976)).

1    because, until *Kyles*, the U.S. Supreme Court's *Brady* jurisprudence traditionally
2    focused on the responsibilities of the prosecutor. This argument is entirely specious.
3    There was never any question that police officers were "bound by" constitutional
4    rules articulated by the Supreme Court. Defendants fail to identify a single
5    authoritative case for the proposition that *Brady's* proscription against the
6    suppression of material, exculpatory evidence does not apply to police officers.

7         All government officials are subject to constitutional rules, regardless of
8    whether the Supreme Court has given a particular kind of government official
9    special notice that they must obey constitutional guidelines. For the purpose of
10   qualified immunity, where a *constitutional right* is clearly established, government
11   officials do not escape liability merely because previous cases focused on violations
12   by a different type of government authority. *Calabretta v. Floyd*, 189 F.3d 808,
13   813-814 (9th Cir. 1999).

14        The Ninth Circuit's decision in *Calabretta* addressed warrantless searches of
15   a home during a child abuse investigation. The social workers argued there was no
16   clearly established law despite a binding Ninth Circuit decision holding that police
17   could not conduct warrantless searches in child abuse investigations. According to
18   *Calabretta*, the rule that government officials cannot coerce entry into people's
19   houses without a search warrant (or special exigency) was so well established that
20   any reasonable government official would know it *even if no previous cases*
21   *addressed the application of the warrant requirement to social workers as opposed*
22   *to police officers*. The Ninth Circuit emphatically rejected the proposition that
23   social workers were entitle to qualified immunity because previous case law (*White*
24   *v. Pierce County*, 797 F.2d 812, 815 (9th Cir.1986)) spoke only to police officers,
25   not social workers." That was an "invalid distinction", for

26        everyone knew that the government could not so enter houses, and
27        *White* said that principle was well established, in the context of a child
          abuse investigation. Appellants' argument that they be allowed
28        qualified immunity because *White* did not speak expressly about social

workers is of the kind that *Anderson* rejects, "[t]hat is not to say that an official action is protected by qualified immunity unless the very action in question has previously been held unlawful...."

189 F.3d at, 813-14 (emphasis added).[7]

Just as there is no social worker exception to the warrant rule, there has never been any police officer exception to *Brady*. Rather, *Brady*'s reasoning envisions application of the rule to the prosecution generally, including the police, as the representatives of the State.[8] *See Moldowan v. City of Warren*, 578 F.3d 351, 378, 379 (6th Cir. 2009) ( "As far as the Constitution is concerned, a criminal defendant is equally deprived of his or her due process rights when the police rather than the prosecutor suppresses exculpatory evidence, because, in either case, the impact on the fundamental fairness of the defendant's trial is the same.").

_____

[7] *See also, O'Donnell v. Brown*, 335 F. Supp. 2d 787, 802 (W.D. Mich. 2004); *Walsh v. Erie Cnty. Dep't of Job & Family Servs.,* 240 F. Supp. 2d 731, 746-47 (N.D. Ohio 2003) ("Despite the defendants' exaggerated view of their powers, the Fourth Amendment applies to them, as it does to all other officers and agents of the state whose requests to enter, however benign or well-intentioned, are met by a closed door. There is, the defendants' understanding and assertions to the contrary notwithstanding, no social worker exception to the strictures of the Fourth Amendment.); *State in Interest of A.R.,* 937 P.2d 1037, 1040 (Utah App.1997) ("the Fourth Amendment's prohibition on unreasonable searches and seizures applies whenever an investigator, be it a police officer, a DCFS employee, or any other agent of the state, responds to an alleged instance of child abuse, neglect, or dependency."); *Franks v. Smith,* 717 F.2d 183, 186 (5th Cir.1983) ("A section 1983 action can also lie against others, such as social workers, where actions by them were taken in their official capacity as state employees.").

[8] *Brady* relies on two earlier Supreme Court cases: *Pyle v. Kansas*, 317 U.S. 213 (1942) and *Mooney v. Holohan*, 294 U.S. 103 (1935). In *Pyle*, the Court held that allegations of "the deliberate suppression by [State] authorities of evidence favorable to [the defendant]" sufficiently state a constitutional deprivation. 317 U.S. at 215-16. Similarly, in *Mooney v. Holohan*, 294 U.S. 103, 112 (1935), the Court held that the use "by a state" of "testimony known to be perjured" is "inconsistent with the rudimentary demands of justice." 294 U.S. at 112. The due process violation in both cases was committed by *the government*, irrespective of the particular governmental actor who suppressed the evidence. As these citations denote, *Brady*'s reference to the "prosecution" serves to encompass all state authorities, including the police, who participate in carrying out a prosecution.

As the Tenth Circuit has held:

[T]he "prosecution" for *Brady* purposes encompasses not only the individual prosecutor handling the case, but also extends to the prosecutor's entire office, *see* [*Giglio v. United States*, 405 U.S. 150, 154 (1972)], as well as law enforcement personnel and other arms of the state involved in investigative aspects of a particular criminal venture. . . . "The duty to produce requested evidence falls on the state; there is no suggestion in *Brady* that different 'arms' of the government are severable entities . . . . 'The duty to disclose is that of the state, which ordinarily acts through the prosecuting attorney.' " *Martinez v. Wainwright*, 621 F.2d 184, 186-87 (5th Cir. 1980) (quoting *Barbee v. Warden, Maryland Penitentiary*, 331 F.2d 842, 846 (4th Cir. 1964)).

*Smith v. Sec'y of New Mexico Dep't of Corr.*, 50 F.3d 801, 824 & n.35 (10th Cir. 1995).

This is consistent with *Brady*'s constitutional underpinnings, as the Due Process clause does not differentiate between state actors. *See Mooney v. Holohan*, 294 U.S. 103, 112-13 (1935) ("The action of prosecuting officers on behalf of the state, like that of administrative officers in the execution of its laws, may constitute state action within the purview of the Fourteenth Amendment. That amendment governs any action of a state, 'whether through its legislature, through its courts, or through its executive or administrative officers.'" (citations omitted)). *See also*, *California v. Trombetta*, 467 U.S. 479, 485 (observing in case addressing the obligations of law enforcement, "Under the Due Process Clause of the Fourteenth Amendment, criminal prosecutions must comport with prevailing notions of fundamental fairness.").

## C.    *KYLES V. WHITNEY* DID NOT RECOGNIZE FOR THE FIRST TIME THAT *BRADY* IMPOSES OBLIGATIONS ON POLICE OFFICERS

Defendants erroneously contend that *Kyles v. Whitney*, 514 U.S. 419, 438 (1995) extended *Brady* in that it recognized, for the first time, that *Brady* proscribes suppression of evidence by law enforcement.There is no textual or logical support for this position. *Kyles* merely reiterated the uncontroversial proposition that

11

1    suppression of evidence maintained by police is no less a constitutional violation

2    than suppression of evidence by prosecutors.

3            Defendants' characterization of *Kyles* as the first case to recognize that *Brady*

4    imposes obligations on police is refuted by the opinion itself, which makes clear

5    that it was not announcing a new rule or, alternatively, resolving unsettled law. In

6    addressing the materiality standard, the Court noted and categorically rejected the

7    state's suggestion that it should not be accountable for evidence known only to the

8    police, observing "[t]o accommodate the State in this manner would . . . amount to a

9    *serious change of course* from the *Brady* line of cases." *Id.* at 438 (emphasis

10   added). The outlandishness of the State's argument in *Kyles* is demonstrated by the

11   fact that, at oral argument, "[t]he State's counsel retreated from [the position],

12   conceding that the State is "held to a disclosure standard based on what all State

13   officers at the time knew." *Id.* at 438 n.11.[9] The consistency of the "*Brady* line of

14   cases," *Kyles*, 514 U.S. at 438, which treats all information in the possession of the

15   prosecutor and the police as subject to *Brady*, inexorably leads to the conclusion

16   _____

17   [9] Further proving that *Kyles* breaks no new ground, Justice Scalia dissented on the ground
     that certiorari should not have been granted in the first place, as the case presented no

18   legal issues worthy of Supreme Court review. The dissent states:

19   What the Court granted certiorari to review, then, is not a decision on an issue of federal
     law that conflicts with a decision of another federal or state court; nor even a decision

20   announcing a rule of federal law that because of its novelty or importance might warrant
     review despite the lack of a conflict; nor yet even a decision that patently errs in its

21   application of an old rule. What we have here is an intensely fact-specific case in which
     the court below unquestionably applied the correct rule of law and did not unquestionably

22   err—precisely the type of case in which we are most inclined to deny certiorari. 514 U.S.

23   at 459-60 (Scalia, J., dissenting). In responding to this dissent, a concurring opinion by
     Justice Stevens confirms the basic point made by the dissent: "Our duty to administer

24   justice occasionally requires busy judges to engage in a detailed review of the particular
     facts of a case, even though our labors may not provide posterity with a newly minted rule

25   of law." 514 U.S. at 455 (Stevens, J., concurring). Between the concurring and dissenting

26   opinions, seven of the nine justices acknowledge that the Court granted certiorari in *Kyles*
     to correct the lower court's improper application of established law, not to resolve any

27   uncertainty in the *Brady* standard.

28

1  that police officers have been on notice since *Brady* that their suppression of

2  material, exculpatory evidence is unconstitutional.

3  　　Defendants' position is historically incorrect. *Kyles*, like *Brady*, falls within a

4  line of cases that the Supreme Court has dubbed the "area of constitutionally

5  guaranteed access to evidence," which is governed by the Due Process clause.

6  *California v. Trombetta*, 467 U.S. 479, 484 (1984) ("[t]o safeguard [the right to

7  present a complete defense], the Court has developed 'what might loosely be called

8  the area of constitutionally guaranteed access to evidence."). Several of these cases

9  arose in circumstances where the evidence at issue was not in the possession of the

10 prosecutor. *United States v. Bagley*, 473 U.S. 667, 671 & n.4 (1985) (remanding to

11 the circuit court to determine whether documents possessed by the investigating

12 agency, *but not known to the prosecutor*, were material such that non-disclosure

13 violated *Brady*); *United States v. Valenzuela-Bernal*, 458 U.S. 858, 866, 872-74

14 (1982) (holding that the government's deportation of a witness does not violate a

15 defendant's due process rights unless the witness possesses material, exculpatory

16 evidence and citing a Fifth Circuit case in which a police detective violated *Brady*

17 by concealing a material witness to the crime, *Freeman v. Georgia*, 599 F.2d 65, 69

18 (5th Cir. 1979)); *Moore v. Illinois*, 408 U.S. 786, 787, 798 (1972) (listing one of the

19 four questions presented as "the nondisclosure to the defense of allegedly

20 exculpatory evidence possessed by the prosecution *or the police*" and holding that

21 the evidence, some of which may have been known only to the police, was not

22 sufficiently material to constitute a *Brady* violation (emphasis added)). In all of

23 these cases, the fact that the suppression was caused by state actors other than the

24 prosecutor did not alter the Supreme Court's due process analysis.[10]

25

26 ―――――――――――――――

27 [10] Defendants explicitly assert that *Giglio*, *Bagley, Moore* and *Agurs* provide no support
   for the proposition that police officers had obligations under *Brady*. MB pp. 9, 10. We
   disagree. As discussed above, *Bagley* and *Moore* involved suppression by police. *Giglio*

28 expressly recognizes that exculpatory information available to the prosecutor – including
   other attorneys in the office – must be disclosed under *Brady*; supports the proposition that

1    The U.S. Supreme Court's decision in *Trombetta*, *supra*, 467 U.S. 479 (1984)

2  addressed whether *Brady* imposed any obligation on law enforcement to preserve

3  evidence of unknown exculpatory value (breath samples secured during the

4  administration of breathalyzer tests). Analyzing the issue under *Mooney, Brady,*

5  *Agurs,* and *Giglio*, the Court held that destruction of evidence of *unknown*

6  exculpatory value did not violate the constitution where authorities had acted in

7  good faith. However, the result would have been different had the evidence

8  possessed apparent exculpatory value and material to the outcome. *Trombetta* at

9  488, 489 ("Whatever duty the Constitution imposes on the States to preserve

10  evidence, that duty must be limited to evidence that might be expected to play a

11  significant role in the suspect's defense;" "the evidence must both possess an

12  exculpatory value that was apparent before the evidence was destroyed, and be of

13  such a nature that the defendant would be unable to obtain comparable evidence by

14  other reasonably available means. Neither of these conditions is met on the facts of

15  this case."). This passage suggests that the Supreme Court considered the

16  preservation of known exculpatory evidence to be governed by the *Brady-Agurs*

17  line of cases. *Trombetta* makes clear that what triggers the duty to disclose, and thus

18  obviously to preserve (and not conceal), is the exculpatory character of the evidence

19  – not the type of government official who has possession of the information.

20    Finally, Defendants incorrectly assume that police suppression of evidence

21  violates a right that is somehow distinct from the right violated when prosecutors

22  suppress exculpatory evidence. MB, p. 12. Contrary to Defendants' position, the

23  non-disclosure of exculpatory evidence is a <u>singular constitutional violation</u>,

24  regardless of which government official causes the information to be withheld:.

25    "['] Of course, the manner in which prosecutors and police officers comply
26    with Brady is different, reflecting their different functions in the criminal

27

28    the "prosecution" does not refer specifically to the trial prosecutor, but instead, the entire
     prosecutorial team, including law enforcement.

14

justice system. Police officers do not disclose evidence to criminal defendants directly. Instead, the police accumulate evidence and then ministerially deliver it to the prosecutor. The prosecutor then makes a discretionary legal judgment about whether the evidence is material and exculpatory, such that Brady compels its disclosure to the defendant.[' Jean v. Collins, 221 F.3d 656, 664 (4th Cir.2000) (Murnaghan, J., dissenting)]. Although the police and prosecutor play different roles in this process, '[t]his functional differentiation ... should not obscure the fact that *Brady* creates a *singular constitutional duty*, which prosecutors and police officers are capable of breaching in factually different ways.' *Id.*"

*Moldowan v. City of Warren*, 578 F.3d 351, 379 (6th Cir. 2009) (emphasis added); *see also, Fields v. Wharrie*, 672 F.3d 505, 513-514 (7th Cir. 2012) (internal citations omitted). "<u>Allowing a police officer to be sued for his role in eventually causing the prosecutor to violate *Brady* or *Giglio* does not alter the nature of the violation</u>…).

### D. MOST CIRCUITS TO HAVE EXAMINED THE ISSUE CONCUR THAT BY 1984/1985 IT WAS CLEARY ESTABLISHED THAT POLICE OFFICERS' SUPPRESSION OF MATERIAL, EXCULPATORY EVIDENCE VIOLATES *BRADY*

Defendants incorrectly claim that "numerous courts from the other Circuits specifically held that the law was not clearly established on this issue until [*Kyles*]." This is an incorrect characterization of the law, but even if it were, a lack of consensus among other circuits in 1984/1985 would be irrelevant so long as the law was clearly established in the Ninth Circuit (as it was here, by *Butler*). In fact, the vast majority of circuits to address the issue have held that it was clearly established long before 1984/1985 that *Brady* prohibits police officers from suppressing material exculpatory evidence. *Geter v. Fortenberry*, 849 F.2d 1550, 1559 (5th Cir. 1988) (police officer's deliberate concealment of exculpatory evidence violates constitutional principles clearly established by *Brady* (**1963**))*; McMillian v. Johnson*, 88 F.3d 1554, 1569, *amended on other grounds on reh'g*, 101 F.3d 1363 (11th Cir. 1996) (police officer's concealment of exculpatory or impeachment evidence violates constitutional rights clearly established by, *inter alia*, *Freeman v. State of Georgia*, 599 F.2d 65, 69, *cert. denied*, 444 U.S. 1013 (**1980**)); *Goodwin v. Metts*, 885 F.2d 157, 162 (4th Cir. 1989),  ("A police officer [in **1983**] who

15

1    withholds exculpatory information from the prosecutor can be liable under . . .

2    section 1983...”); *overruled in part by Albright v. Oliver*, 510 U.S. 266 (1994); *see*

3    *also Walker v. City of New York*, 974 F.2d 293, 299 (2d Cir. 1992) (citing 1970s

4    and 1980s cases for proposition that police, as well as prosecutors, have *Brady*

5    obligations ).

6        Though Defendants insist that various circuits have held the constitutional

7    right was not established until *Kyles* (1994), only <u>one</u> known circuit case supports

8    Defendant's position that, at the time of the events in this case, it was not clearly

9    established that a police officer's suppression of material, exculpatory evidence

10   violates the constitution: *Gibson v. Superintendent of N.J. Dept. of Law & Pub.*

11   *Safety-Div. of State Police*, 411 F.3d 427, 443-44 (3d Cir. 2005), *overruled on other*

12   *grounds by Dique v. N.J. State Police*, 603 F.3d 181, 183 (3d Cir. 2010) (holding

13   that the defendant police officers' duty to disclose material, exculpatory evidence

14   was not clearly established within the Third Circuit in 1994).

15       Beyond *Gibson*, Defendants cite various cases from the Fourth and Seventh

16   Circuits. These cases are inapposite and/or do not stand for the proposition for

17   which they are cited.[11] Defendants entirely mischaracterize the 6th Circuit's decision

18

_____

19   [11] Defendants cite to the <u>concurring</u> opinion in *Jean v. Collins*, 221 F.3d 656 (4th Cir.

20   2000) (en banc), which is not controlling authority even within the Fourth Circuit because
     the court was divided evenly. Further, the *Jean* concurrence does not disturb *Goodwin v.*

21   *Metts*, a pre-*Kyles* Fourth Circuit case, holding that "[a] police officer who withholds

22   exculpatory information from the prosecutor can be liable under . . . section 1983." *Jean*,
     221 F.3d at 659 (Wilkinson, C.J., concurring in judgment) (quoting *Goodwin v. Metts*, 885

23   F.2d 157, 162 (4th Cir.1989), *overruled in part on other grounds by*, *Albright v. Oliver*,
     510 U.S. 266 (1994)). Defendants also cite *Taylor v. Waters*, 81 F.3d 429 (4th Cir. 1996).

24   Like *Jean*, *Taylor* does not disturb the relevant holding of *Goodwin*. *See Taylor*, 81 F.3d

25   at 436 n.5 (confirming the continued validity of *Goodwin*, "to the extent that *Goodwin*
     ruled that the officer's failure to disclose the exculpatory information deprived the §1983

26   plaintiffs of their right to a fair trial, " citing *Brady* (1963) as support). Rather, *Taylor*
     granted qualified immunity because the plaintiff's criminal case was dismissed before

27   trial, and therefore he was not denied his due process right to a fair trial as a result of the
     suppressed evidence. *Id.* at 435-36. *Taylor* is inapplicable here. Defendant's reliance on

28   *Harris v. Cuba*, 486 F.3d 1010, 1014 (7th Cir. 2007) is also misplaced. It held that police

1    in *Moldowan*. In *Moldowan*, the Sixth Circuit did not hold that the right to be free

2    from conviction on the basis of evidence suppressed by police was clearly

3    established in 1999. Rather, it determined that the right was clearly established by

4    the earliest date of the officer's involvement in the investigation, 1990.

5    Significantly, *Moldowan* cited to three cases that determined the right was clearly

6    established prior to 1990, and in fact, prior to 1984/1985 (*Barbee*, 1964,

7    *Geter*,1963, and *Jones*, 1981).

8        Even assuming that the law was in flux pre-1984, a point Plaintiffs do not

9    concede, it is immaterial because, in the qualified immunity context, the relevant

10   inquiry for determining clearly established law is whether there exists "controlling

11   authority in [his] jurisdiction" or*, if not*, whether there exists a "consensus of cases

12   of persuasive authority" from other jurisdictions. *See Wilson v. Layne*, 526 U.S.

13   603, 617 (1999); *see also United States v. Lanier*, 520 U.S. 259, 268, 270 (1997)

14   (noting that qualified immunity analysis does not require that the law be clearly

15   established *by Supreme Court precedent*, and rejecting the Sixth Circuit's contrary

16   ruling).The lack of complete unanimity does not mean  no consensus exists. *Inouye*

17   *v. Kemna*, 504 F.3d 705, 716 (9th Cir. 2007) (reversing grant of qualified immunity

18   because, although there was no controlling Ninth Circuit authority and despite a

19   small number of divergent opinions, the relevant constitutional principle was clearly

20   established by *the consensus* of cases in other jurisdictions).

21       In the instant case, it is not necessary to determine whether a consensus of

22   cases of persuasive authority existed because *Butler* decided in 1978 (regarding

23   crimes committed several years earlier) that a due process violation occurs where

24

25   officers did not violate the plaintiff's *Brady* rights because most of the alleged *Brady*

26   evidence was not suppressed and was marginally favorable, and the remaining evidence

     did not qualify as *Brady* evidence under Seventh Circuit authority. *Harris* cites *Newsome*

27   with approval and confirms that the state's *Brady* "obligation extends to police officers,

     insofar as they must turn over potentially exculpatory evidence when they turn over

28   investigative files to the prosecution." *Harris*, 486 F.3d at 1014.

1    evidence from police files is suppressed. This precedent is dispositive even if other

2    circuits issue directly conflicting opinions. *Rivero v. San Francisco*, 316 F.3d 857,

3    865 (9th Cir. 2002) ("The issue is not what the law was or might have been in other

4    circuits in [the relevant year]. It is, rather, what the 'controlling authority in [the

5    defendants'] jurisdiction [was] at the time of the incident.'") (quoting *Wilson v.*

6    *Layne*, 526 U.S. 603, 617 (1999)); *see also, e.g.*, *Boyd v. Benton County,* 374 F.3d

7    773, 781 (9th Cir.2004) ("In the Ninth Circuit, we begin our inquiry by looking to

8    binding precedent. If the right is clearly established by decisional authority of the

9    Supreme Court or this Circuit, our inquiry should come to an end.") (citations

10   omitted) (quoted in *Hopkins v. Bonvicino*, 573 F.3d 752, 772 (9th Cir. 2009)).[12]

11           Not only is it irrelevant, but Defendants' claim that "this issue is still in flux

12   as of this year" (MB, p. 21 ("various circuits are still in disagreement"))", but it is a

13   grave mischaracterization of the general state of the law [13] *See Tiscareno v.*

14

15

16   [12] Even if a circuit split had existed in 1984/1985, which was later resolved by the
     Supreme Court in *Kyles*, it is of no consequence. The case would be in exactly the same

17   posture as *Rivero*, where the Ninth Circuit held that the relevant legal principle was

18   clearly established in the Ninth Circuit in 1993 even though a circuit split existed at the
     time, which was later resolved by the Supreme Court in 1996. *Rivero*, 316 F.3d at 865

19   ("[T]he fact that there was a circuit split does not mean that the law was not clear in this
     Circuit prior to the [Supreme] Court's decision.")

20   [13] For cases which imply that police officers have no duty, under *Brady*, to refrain from

21   suppressing material exculpatory evidence, Defendant cites an unpublished Sixth Circuit
     case and two unpublished opinions from a district court case within the Sixth Circuit.

22   AOB at 31 (citing *Lindsay v. Bogle*, 92 F. App'x 167 (6th Cir. 2004); *id.* at 34-36 (citing

23   *D'Ambrosio v. Marino*, No. 11-933, 2013 WL 256312 (N.D. Ohio Jan. 23, 2013) and
     *D'Ambrosio v. Marino*, No. 11-933, 2012 WL 4504523 (N.D. Ohio Oct. 1, 2012).

24   Whatever these cases may imply, the Sixth Circuit held otherwise in *Moldowan v. City of*
     *Warren*, 578 F.3d 351, 381 (6th Cir. 2009), stating that "the overwhelming number of

25   decisions from other circuits recognizing this type of claim satisfies us that any reasonable
     police officer [in 1990] would know that suppressing exculpatory evidence was a violation

26   of the accused's constitutional rights." Defendant also cites a District of Puerto Rico case.

27   AOB at 32-33 (citing *Moreta-Ramirez v. Lemert*, 156 F. Supp. 2d 138 (D.P.R. 2001)).
     Regardless of the district court's flawed analysis in *Moreta-Ramirez*, which was

28   conducted under the heading "Fourth Amendment," the plaintiff did not present a

18

1    *Anderson*, 639 F.3d 1016, 1023, *opinion vacated in non-pertinent part on reh'g*,

2    421 F. App'x 842 (10th Cir. 2011) ("Nearly all of our sister circuits have also

3    determined that police may be liable under §1983 for failure to turn over *Brady*

4    evidence."); *Moldowan v. City of Warren*, 578 F.3d 351, 381 (6th Cir. 2009)

5    ("virtually every other circuit has concluded either that the police share in the

6    state's obligations under *Brady*, or that the Constitution imposes on the police

7    obligations analogous to those recognized in *Brady*" and collecting cases).

8    **IV.    CLAIMS AGAINST ERIC PARRA ARE NOT TIME BARRED**

9         Plaintiff named the Estate of Gilbert Parra so that he could proceed under

10   Cal. Probate Code §550, which permits claims against insured estates. Plaintiff also

11   named Eric Parra, Gilbert Parra's son and the personal representative of Gilbert

12   Parra's estate, to ensure that any pre-conditions to indemnification would be

13   satisfied, enabling him to proceed under Prob. Code. §550. Though Defendants'

14   brief leads with the statute of limitations issue under §§353, 366.2, we begin our

15   discussion with Prob. Code §550 because it is the central issue for Defendants'

16   statute of limitations argument and determines what remaining issues must be

17   addressed. Once it is determined that Prob. Code §550 applies, Eric Parra will no

18   longer be needed as Defendants in this lawsuit. [14]  His dismissal would, in turn,

19   moot two issues: (1) the shortened statute of limitations under CCP §§353, 366.2,

20   and; (2) creditor claims filing requirements under Probate Code §9000 et. seq., both

21   of which are completely irrelevant to claims asserted under Prob. Code §550; they

22   apply only with respect to claims against the surviving family members.

23

24

25

26

27   traditional *Brady* claim because charges were dismissed before trial, and thus there was not a deprivation of a fair trial.

28   [14] If Prob. Code §550 applies, Plaintiff is prepared to dismiss Eric Parra to this lawsuit subject to certain conditions.

19

1

2

## A.  PLAINTIFF MAY ASSERT CLAIMS DIRECTLY AGAINST THE ESTATE OF GILBERT PARRA UNDER PROBATE CODE §550

3

Plaintiffs ordinarily may not sue an estate directly. However, California Prob.

4

Code §550 et seq. permits claims directly against an estate indemnified by

5

insurance. Prob. Code §550(a). The suit technically proceeds against the estate to

6

determine liability, but a judgment is enforceable only from the insurance coverage

7

and not against the estate. Prob. Code §554(a). Prob. Code §550 eliminates the

8

Probate Code's strict claims-filing period and shortened statute of limitations for

9

actions seeking recovery against estates. *Neuland v. Russell*, 123 Cal.Rptr. 230 (Cal.

10

App. 4 Dist. 1975). Section 550, et seq. was intended to cover situations, as here,

11

where the decedents have no personal representative when the action is filed. *Id.*[15]

12

Gilbert Parra's estate is insured by the County of Los Angeles, a self-insured

13

government entity. L.A. County has a mandatory duty to indemnify and defend law

14

the detectives (and their estates) for conduct within the scope of their employment.

15

Government Code §825 et seq; §995. For purposes of Prob. Code §550, there is no

16

logical reason to differentiate liability insurance from the mandated indemnification

17

here. Commercial insurance and statutory indemnification are a means to the same

18

end: indemnification of a defendant. *See Aerojet-Gen. Corp. v. Transp. Indem. Co.*,

19

17 Cal. 4th 38, 56–57 (Cal. 1997). Judge Dale Fischer recently considered the

20

identical issue in *Shortt v. County of Los Angeles*, CV-05484-DSF-JCG, and

21

22

23

24

25

26

27

28

---

[15] By dispensing with claims filing requirements on the one hand, while limiting recovery to the amount of insurance on the other, Prob. Code §550 reflects a legislative understanding that a party who seeks ultimate recovery only from a defendant's insurer does not threaten the defendant's assets. *Webster v. Superior Court*, 46 Cal. 3d 338 (1988) (construing former Prob. Code, §§709, 721, now §§550 et seq., 9390).[15] This facilitates compensation of injured persons, without compromising the public's interest in prompt and final disposition of estate assets. *Smith v. Interinsurance Exchange*, 167 Cal.App.3d 301, 304 (Cal.App.4 Dist. 1985) ("Probate is avoided, the decedent's liability is litigated without placing his or her estate at risk, and recovery is limited to the decedent's available insurance proceeds.") (internal citations omitted).

1    determined that the County's mandatory duty to indemnify is tantamount to liability

2    insurance under Prob. Code. §550.  Battles Decl.,¶2, Ex. A (6/14/12 Order of Dale

3    Fischer Denying Defendants' Motion to Dismiss, Dkt. 79). *See also, Pelayo v. City

4    of Downey*, 570 F.Supp.2d 1183 (C.D. Cal. 2008*) (once triggered, the right to

5    indemnification by a public employer (who is insured or self-insured) qualifies as

6    insurance coverage within the meaning of Prob. Code §550.

7         Like virtually all indemnification schemes, Government Code §825(a)

8    requires notice of the claim (here within 10 days before trial) so that the employer

9    may participate meaningfully in the defense. As Defendants observe, *Pelayov. City*

10   *of Downey* held that the right to indemnification does not arise until the public

11   employee (or representative of a deceased employee's estate) submits a formal

12   request for defense and indemnification to the public employer. Because this pre-

13   condition for coverage had not been satisfied there, the *Pelayo* plaintiff could not

14   establish that the deceased officer was covered by insurance for the purpose of

15   Probate Code §550.The issues that arose in *Pelayo* do not apply in this case.

16   Plaintiff has precisely complied with the procedural steps enumerated in *Pelayo* by

17   naming the estates, serving the County as the liability insurance provider, and

18   naming Eric Parra, the personal representative of Gilbert Parra's estate, to ensure

19   that a formal request for indemnification is submitted to the County.

20        Whether Eric Parra has submitted a formal request is a question of fact that

21   requires discovery. Plaintiff requests that Defendants' Reply advise the Court on the

22   issue, including whether Mr. Parra is being provided a defense by the County

23   (which it appears is the case since the same counsel represents all defendants).

24        Even if Eric Parra were not to submit a request, there are sound reasons to

25   reject *Pelayo*'s conclusion that no right to indemnification exists prior to a request

26   for legal defense/indemnification. Section 825's provision requiring a request for

27   defense is highly analogous to "notice" provisions commonly included in policies

28   for liability insurance, and should be construed under the same principles governing

21

1   notice provisions in the insurance context. Even where notice of claim constitutes a

2   precondition for coverage, non-willful failure to satisfy a notice provision does not

3   defeat coverage unless the failure results in actual substantial prejudice. *See, e.g.,*

4   *Belz v. Clarendon America Ins. Co.*, 69 Cal.Rptr.3d 864 (Cal.App.2 Dist.2007)

5   (insured's failure to comply with notice provision would relieve insurer of

6   obligation to indemnify only if insurer could demonstrate actual, substantial

7   prejudice from the lack of notice).

8        In *Shortt v. County of Los Angeles*, Judge Fischer determined that the absence

9   of a request may not render §550 unavailable so long as the public entity has notice

10  of the claim, as is the case here. She observed, "[I]t is not clear that the absence of a

11  request under §825(a) should eliminate the possibility of recovery," where the

12  public entity has timely notice of the nature of the claim so that it may investigate

13  and settle those having merit without litigation. Battles Decl.,¶2, Ex. A, p. 4 FN 2

14  (6/14/12 Order of Dale Fischer Denying Defendants' Motion to Dismiss, Dkt. 79).

15  This conclusion is reinforced in light of the potential that indemnification is not

16  being sought for the sole purpose of defeating Plaintiffs claims.

17
18      **B.**    **EVEN IF §550 DOES NOT APPLY, CLAIMS AGAINST ERIC PARRA ARE
NOT TIME-BARRED OR OTHERWISE PRECLUDED**

19        In this sub-section, Plaintiffs explain why, even if Prob. Code §§550 et seq.

20  do not apply – which Plaintiffs believes would be an erroneous conclusion –

21  Plaintiffs may proceed nonetheless against Eric Parra.

22        There are no statute of limitations issues. Defendants argue that CCP

23  §366.2[16] bars Plaintiff's claims against the individual officers because no claim was

24  filed within one year of the date of death. Defendants fail to recognize that such a

25  limitation applies only to claims that had arisen before the Defendants' death, and

26  not claims arising afterwards, as is the case here. *In re Estate of Yool*, 151 Cal. App.

27
28

4th 867, 876-77 (2007). *Yool* makes clear that § 366.2 does not apply to claims that have not yet arisen, explaining that, under §366.2, "a cause of action that is nascent but not complete will survive, such that a plaintiff's rights may ripen into an actionable claim after a decedent's death.". Plaintiffs' §1983 claims arose after Gilbert Parra's death. *Heck v. Humphrey*, 512 U.S. 477, 489 (1994) ("the statute of limitations poses no difficulty while the state challenges are being pursued, since the §1983 claim has not yet arisen"). Because the claims did not exist at the time of Gilbert Parra's death, CCP §353 does not apply.

Nor do claims filing requirements necessarily bar recovery. Gilbert Parra's estate was administered in probate. Eric Parra was appointed by the Probate Court as the personal representative of Gilbert Parra's estate. The probate matter is now closed. Where there has been a probate and the probate matter has been closed, as is the case here, the Prob. Code provides a mechanism by which claimants may seek recovery from probate estate distributees and/or personal representatives. Prob. Code §§11429(b), 9053(b) (recovery against a personal representative); Prob. Code §9392(a) (recovery against distributees).

Under both scenarios, late claims are subject to strict limitations. A creditor has recourse against a personal representative only where he can establish, *inter alia*, that the personal representative failed to give notice to the creditor, and acted in bad faith. Prob. Code §§11429(b), 9053(b). A creditor has recourse against probate distributees only where the creditor was "known or reasonably ascertainable" by the personal representative within four months after the date letters of administration were first issued to the personal representative. Prob. Code §9392(a). Defendants' motion for judgment on the pleadings does not address these mechanisms for filing claims where a probate matter has been closed. Whether Plaintiff can establish the necessary conditions to assert a late claim under these

---

[16] CCP §353 was superseded by §366.2 with identical language for claims after January 1, 1993, by CCP §366.2.

23

1    standards requires discovery on the issue of whether Eric Parra acted in bad faith

2    and whether plaintiffs were reasonably ascertainable to Eric Parra when the probate

3    matter was open. Although Plaintiffs believe that the matter should be resolved in

4    their favor on the other issues raised above, this matter is inappropriate for

5    resolution by the instant motion.

6         Plaintiffs assert that the late-claims restrictions discussed above would not

7    necessarily apply to this case because the probate code did not contemplate a

8    situation, as here, where a claim arises years, if not decades, after the Defendant

9    dies.

10        Furthermore, as Judge Dale Fischer recognized in *Shortt*, to the extent that

11   probate claims filing requirements would bar claims against Eric Parra, they should

12   not necessarily be applied in this case. *See* Battles Decl.,¶2, Ex. A, pp. 4, 5 FN 3

13   (6/14/12 Order of Dale Fischer Denying Defendants' Motion to Dismiss, Dkt. 79).

14   If state probate law would preclude Plaintiffs' claims, thereby undermining the

15   objectives of §1983, it does not govern, and that would be the case here. *See*

16   *Burnett v. Grattan*, 468 U.S. 42, 50-51, 104 S. Ct. 2924, 2930 (1984) (state law

17   government claims filing period ignores the practicalities of litigation, and denies

18   plaintiffs a "reasonable time to sue" and thus does not apply to claims under §1983,

19   468 U.S. at 50-51 & 53 n.15).

20        *Burnett* explained that the Civil Rights Acts "are characterized by broadly

21   inclusive language", and "do not limit who may bring suit, do not limit the cause of

22   action to a circumscribed set of facts, nor do they preclude money damages or

23   injunctive relief." Accordingly, "state law is not 'appropriate' if it fails to take into

24   account practicalities that are involved in litigating federal civil rights claims and

25   policies that are analogous to the goals of the Civil Rights Acts." A state claims

26   filing requirement does not apply because it "ignores the dominant characteristic of

27   civil rights actions: they belong in court." 468 U.S. at 50-51. See also *Wilson v.

28   Garcia,* 471 U.S. 261, 276, 105 S.Ct. 1938, 1947 (1985) (while federal law looks to

1  the forum state's general personal injury statute of limitations to determine the

2  applicable statute of limitations under §1983, that does not change the fact that all

3  questions under discussion are ultimately questions of federal law; state law may

4  not unreasonably burden a plaintiff's rights under §1983 or interfere with the

5  statute's objectives).

6          Thus, to the extent that California law interferes with a plaintiff's ability to

7  bring a §1983 claim under the applicable federal standards, that law must be

8  harmonized with the purposes and objectives of §1983 – which Plaintiff has done in

9  his explanation of California law and proposals for how to proceed consistent with

10  California law that are set out above. At the end of the day, Plaintiff must be

11  allowed his day in court, and this Court must conclude, as did the *Burnett* court, that

12  state law is inapplicable if it would prevent that. It need not come to that because, as

13  Judge Fischer suggested, notice to the County and the personal representative is

14  sufficient to proceed. There would appear to be no question that, in that event, the

15  County will indemnify Mr. Parra.

16  **V.      CONCLUSION**

17          For the foregoing reasons, Defendants' Motion for Judgment on the

18  Pleadings should be denied.

19   DATED: August 14, 2013                    Respectfully Submitted,

20

21                                             LITT, ESTUAR, & KITSON LLP
                                               LAW OFFICES OF GREGORY YATES

22

23                                             By:__/s/ Barrett S. Litt_____
                                                  Barrett S. Litt

24                                                Attorneys for Plaintiff

25

26

27

28