1   PAUL B. BEACH, State Bar No. 166265
    pbeach@lbaclaw.com
2   MICHAEL D. ALLEN, State Bar No. 198126
    mallen@lbaclaw.com
3   GEORGE E. MORRIS JR., State Bar No. 281062
    gmorris@lbaclaw.com
4   LAWRENCE BEACH ALLEN & CHOI, PC
    100 West Broadway, Suite 1200
5   Glendale, California 91210-1219
    Telephone No. (818) 545-1925
6   Facsimile No. (818) 545-1937

7

8   Attorneys for Defendants,
    COUNTY OF LOS ANGELES, J.D. SMITH and ERIC PARRA

9

10              **UNITED STATES DISTRICT OF COURT**

11              **CENTRAL DISTRICT OF CALIFORNIA**

12

13  FRANK O'CONNELL, NICHOLAS          ) Case No. 13-CV-01905-MWF (PJWx)
    O'CONNELL                          )
14                                     ) Honorable Michael W. Fitzgerald
              Plaintiffs,              )
15                                     )
                                       )
16          v.                         ) **DEFENDANTS J.D. SMITH AND
                                       ) ERIC PARRA'S MEMORANDUM
17                                     ) OF POINTS AND AUTHORITIES
                                       ) IN REPLY TO PLAINTIFF'S
18  J.D. SMITH; ESTATE OF GILBERT      ) OPPOSITION TO MOTION FOR
    PARRA; ERIC PARRA, COUNTY OF       ) JUDGMENT ON THE
19  LOS ANGELES AND DOES 1-10.         ) PLEADINGS AS TO PLAINTIFFS'
                                       ) 42 U.S.C. § 1983 CLAIMS UNDER
20            Defendants.              ) *BRADY V. MARYLAND* ON THE
                                       ) BASIS OF QUALIFIED
21                                     ) IMMUNITY**
                                       )
22                                     )
                                       )
23                                     )
                                       ) Date:      September 23, 2013
24                                     ) Time:      10:00 a.m.
                                       ) Place:     Courtroom 1600
25                                     )            (Spring Street)
                                       )
26                                     )
                                       )
27                                     )
                                       )
28                                     )

                                    1

1        Defendants J.D. SMITH and ERIC PARRA submit the following

2   Memorandum of Points and Authorities in Reply to Plaintiffs' Opposition to

3   Defendants' Motion for Judgment on the Pleadings as to Plaintiffs' 42 U.S.C. §

4   1983 claims under *Brady v. Maryland* on the basis of qualified immunity.

5

6   Dated:  August 30, 2013        LAWRENCE BEACH ALLEN & CHOI PC

7

8                 By:  /s/ *Michael D. Allen*

9                   Michael D. Allen
              Attorneys for Defendants,

10            COUNTY OF LOS ANGELES, J.D. SMITH and
              ERIC PARRA

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# **TABLE OF CONTENTS**

I.      INTRODUCTION ..................................................................................... 1

II.     PLAINTIFFS' FAILURE TO TIMELY FILE A CREDITOR'S
        CLAIM WITH GILBERT PARRA'S ESTATE BARS
        PLAINTIFFS' CLAIMS AGAINST ERIC PARRA ................................... 3

        A.      Plaintiffs' Claims Against Eric Parra Are Precluded By
                California Code of Civil Procedure § 366.2 and California
                Probate Code §§ 9000, Et Seq ................................................... 3

        B.      Plaintiffs Have Not And Cannot Establish That Gilbert Parra
                Is Covered By Insurance For Purposes Of Probate Code § 550 ........ 8

III.    DETECTIVES SMITH AND PARRA ARE ENTITLED TO
        QUALIFIED IMMUNITY BECAUSE THE LAW WAS NOT
        CLEARLY ESTABLISHED IN 1984 TO WHAT EXTENT, IF
        ANY, THE OBLIGATIONS UNDER BRADY  APPLIED
        TO POLICE OFFICERS ........................................................................ 11

        A.      Neither Supreme Court Precedent Nor Out-Of-Circuit Case
                Law Clearly Established In 1984 That A Prosecutor's
                Obligations Under Brady Also Applied To Police Officers ............ 11

        B.      In 1984, There Was No Clearly Established Ninth Circuit Law
                Regarding The Extent A Prosecutor's Obligations Under
                Brady Applied To Police Officers ................................................... 14

IV.     CONCLUSION ..................................................................................... 19

i

# TABLE OF AUTHORITIES

**Page(s)**

Cases

*Alston v. Read*,
663 F.3d 1094 (9th Cir. 2011).........................................................2, 12

*Barbee v. Warden, Md. Penitentiary*,
331 F.2d 842 (4th Cir. 1964)..............................................................14

*Bilbrey by Bilbrey v. Brown*,
738 F.2d 1462 (9th Cir. 1984)............................................................18

*Boyle v. County of Kern*,
2008 WL 220413 (E.D.Cal. 2008) .......................................................7

*Bradley v. Breen*,
73 Cal.App.4th 798 (1999)...............................................................4, 6

*Brady v. Maryland*,
373 U.S. 83 (1963) ........................................................2, 11, 16, 19

*Burnett v. Grattan*,
468 U.S. 42 (1984) ........................................................................6, 7

*California v. Trombetta*,
467 U.S. 479 (1984) .........................................................................16

*D'Ambrosio v. Marino*,
2012 WL 4504523 (N.D. OH 2012) ..............................................13, 17

*D'Ambrosio v. Marino*,
2013 WL 256312 (N.D. OH 2013) ......................................................15

*Drumgold v. Callahan*,
707 F.3d 28 (1st Cir. 2013) ...............................................................16

*Fields v. Wharrie*,
672 F.3d 505 (7th Cir. 2012)..............................................................17

*Freeman v. State of Ga.*,
   599 F.2d 65 (5th Cir. 1979)................................................................15

*Freitas v. Stone*,
   818 F.Supp. 1333 (D. HI 1993)........................................................18

*Gibson v. Superintendent of N.J. Dept. of Law & Pub. Safety-Div. of State Police*,
   411 F.3d 427 (3d Cir. 2005)................................................13, 15, 17

*Goodwin v. Metts*,
   885 F.2d 157 (4th Cir. 1989)........................................................12, 13

*Haley v. City of Boston*,
   657 F.3d. 39 (1st Cir. 2011) ............................................................16

*Harris v. Kuba*,
   486 F.3d 1010 (7th Cir. 2007)....................................................13, 17

*Heck v. Humphrey*,
   512 U.S. 477 (1994) ........................................................................4

*Imbler v. Craven*,
   298 F. Supp. 795(C.D. Cal. 1969)....................................................14

*In re Estate of Yool*,
   151 Cal.App.4th 867 (2007)........................................................3, 4

*Jean v. Collins*,
   221 F.3d 656 (4th Cir. 2000)....................................................13, 17

*Kyles v. Whitley*,
   514 U.S. 419 (1995) ................................................................15, 16, 17

*Levine v. Levine*,
   102 Cal.App.4th 1256 (2002)............................................................6

*Marsh v. Cnty. of San Diego*,
   680 F.3d 1148 (9th Cir. 2012)......................................................1, 12

*Mattos v. Agarano*,
   661 F.3d 433 (9th Cir. 2011)......................................................12, 19

*McMillian v. Johnson,*
  88 F.3d 1554 (11th Cir. 1996).................................................................12

*Moldowan v. City of Warren,*
  578 F.3d 351 (6th Cir. 2009)..................................................................13

*Moreta-Ramirez v. Lemert,*
  156 F. Supp. 2d 138 (D.P.R. 2001).........................................13, 15, 17

*Pearson v. Callahan,*
  555 U.S. 223 (2009) ................................................................2, 13, 18

*Pelayo v. City of Downey,*
  570 F.Supp.2d 1183 (C.D. CA 2008)..........................................8, 9, 10

*Romero v. Kitsap County,*
  931 F.2d. 624 (9th Cir. 1991).........................................................2, 12

*Surrels v. McKee,*
  290 F.3d 965 (9th Cir. 2002)..................................................................19

*Taylor v. Waters,*
  81 F.3d 429 (4th Cir. 1996)....................................................................13

*Tennison v. City & County of San Francisco,*
  570 F.3d 1078 (9th Cir. 2009)...........................................................17, 18

*U.S. ex rel. Smith v. Fairman,*
  769 F.2d 386 (7th Cir. 1985)..................................................................15

*United States v. Butler,*
  567 F.2d 885 (9th Cir. 1978)..................................................................14

*United States v. Endicott,*
  869 F.2d 452 (9th Cir. 1989)..................................................................15

*United States v. Hsieh Hui Mei Chen,*
  754 F.2d 817 (9th Cir. 1985)..................................................................15

*Van Ort v. Estate of Stanewich,*
  92 F.3d 831 (9th Cir.1996)......................................................................7

*Walker v. City of New York,*

    974 F.2d 293 (2nd Cir. 1992) ........................................................................12

*Wilson v. Layne,*

    526 U.S. 603 (1999) .....................................................................................13

*Wood v. Strickland,*

    420 U.S. 308 (1975) .....................................................................................18

Statutes

Code of Civil Procedure § 366.2 ...................................................................passim

Government Code § 825 .......................................................................1, 8, 9, 10

Government Code § 995 ...................................................................................8

Probate Code § 550 .................................................................................passim

Probate Code § 9000 ...............................................................................passim

Probate Code § 9053 .......................................................................................5

Probate Code § 9351 .......................................................................................7

Probate Code § 9392 .......................................................................................5

Probate Code § 11429 ......................................................................................5

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.    INTRODUCTION.

Plaintiffs' opposition papers are nothing more than a concerted attempt to throw every possible argument at the Court and see what sticks.  Unfortunately, as explained below, Plaintiffs' arguments are erroneous, unconvincing, are based on mischaracterizations of several cases, and wholly without merit.

First, Plaintiffs ignore that their claims based on the alleged misconduct of deceased Detective Gilbert Parra are barred by the one year limitation on claims against a decedent, **whether accrued or not accrued**, pursuant to California Code of Civil Procedure § 366.2 and Probate Code §§ 9000, *et seq*.  Significantly, Plaintiffs have not and cannot assert that any timely creditor's claim was filed against Detective Gilbert Parra's estate as required by C.C.P. § 366.2.  Moreover, Probate Code § 550 does not save Plaintiffs' failure to allege the filing of a timely claim.   Plaintiffs' claim that Gilbert Parra is protected by "insurance" under the indemnity provision of California Government Code § 825 does not save their untimely claims vis-á-vis Section 550 because, even if such provision was considered insurance, indemnity under § 825 is only triggered if the **employee** who is being sued requests it in writing at least 10 days before trial.  Plaintiffs do not assert that any written request has been made, and since Gilbert Parra died in 2003, no future written request is possible.  Accordingly, since it appears that Plaintiffs' claims against Eric Parra are solely based on alleged conduct by his deceased father, Detective Gilbert Parra, Plaintiffs' claims against Eric Parra should be dismissed.

Second, Plaintiffs fail to undermine Detectives J.D. Smith and Gilbert Parra's entitlement to qualified immunity.  As emphasized in the moving papers, "[a] plaintiff must also show that the federal right was 'clearly established' **at the time of the violation**, otherwise government officials are entitled to qualified immunity." *Marsh v. Cnty. of San Diego*, 680 F.3d 1148, 1152 (9th Cir. 2012)

1  (emphasis added); *see also, Alston v. Read*, 663 F.3d 1094, 1098 (9th Cir. 2011);

2  *Romero v. Kitsap County*, 931 F.2d. 624, 627 (9th Cir. 1991).

3  Plaintiffs completely ignore United States Supreme Court authority that, if circuit

4  courts are split on a particular legal issue, "**it is unfair to subject police to**

5  **money damages for picking the losing side of the controversy**'" *Pearson v.*

6  *Callahan,* 555 U.S. 223, 245 (2009) (Emphasis added.)  Plaintiffs cannot show

7  that in 1984, when Detectives Smith and Parra were conducting the underlying

8  criminal investigation at issue in this case, the law was clearly established that the

9  obligations of prosecutors under *Brady v. Maryland*, 373 U.S. 83 (1963) also

10 applied to police officers.

11      Plaintiffs fail to cite any relevant Ninth Circuit cases on point regarding

12 this issue that existed prior to the 2009 *Tennison v. City & County of San*

13 *Francisco* case[1] and none of the out-of-circuit cases Plaintiffs rely upon pre-date

14 the underlying criminal investigation in 1984.  Also, even though Plaintiffs point

15 to four out-of-circuit cases in an attempt to show that police officers' obligations

16 under *Brady* were clearly established prior to 1984, Plaintiffs ignore the fact that

17 at least three other circuits have held otherwise.  The fact that there is a circuit

18 split on this issue of law only further illustrates that the law was not clearly

19 established in 1984.  The Detectives should not be subjected to civil liability

20 simply for an alleged failure in 1984 to predict the future course of the law.

21      Therefore, because in 1984 there was no clearly established law in the

22 Ninth Circuit, in the Supreme Court, or in a consensus of the circuit courts

23 regarding to what extent, if any, *Brady* obligations applied to police officers,

24 Detectives Smith and Parra are entitled to qualified immunity with respect to

25 Plaintiffs' "*Brady*" claims as a matter of law.

---

27 [1] Plaintiffs' reliance on *United States v. Butler*, 567 F.2d 885 (9th Cir. 1978) is

28 erroneous.  *Butler* imposed the duties under *Brady* on the prosecutor, not police officers.

## II.    PLAINTIFFS' FAILURE TO TIMELY FILE A CREDITOR'S CLAIM WITH GILBERT PARRA'S ESTATE BARS PLAINTIFFS' CLAIMS AGAINST ERIC PARRA.

First and foremost, Plaintiffs do not dispute the fact that they failed to file a creditor's claim against Detective Gilbert Parra's estate.  Instead, Plaintiffs incorrectly and misguidedly argue that the relevant law does not apply to their claims and that they qualify for the exception under Probate Code § 550.  As explained below, each of Plaintiffs' arguments lack merit.

### A.    Plaintiffs' Claims Against Eric Parra Are Precluded By California Code of Civil Procedure § 366.2 and California Probate Code §§ 9000, *Et Seq.*

Plaintiffs' argument that California Code of Civil Procedure § 366.2, which imposes a one year limitation on claims  brought against decedents ("whether accrued or not accrued"), is inapplicable lacks merit and is contradicted by the statute and case law.  Plaintiffs' reliance on *In re Estate of Yool,* 151 Cal.App.4th 867 (2007) is misplaced for several reasons.  *Yool* involved claims by two children of a decedent who were attacking an order on a petition in probate directing the administrator of their mother's estate to quitclaim to their sister any interest of the estate in certain real property.  *Id.* at 870-71.  Because the actionable conduct, i.e., the petition in probate, did not occur until **after** the decedent's death, the Court found that § 366.2 did not apply to bar these claims that had not yet arisen. *Id.* at 877.  In the instant case, on the other hand, the alleged actionable conduct took place well before the death of Gilbert Parra.

More importantly, by its express language, Section 366.2 applies "[i]f a person against whom an action may be brought **on a liability of the person**, whether arising in contract, tort, or otherwise, and whether accrued or not accrued…"  (Emphasis added.) Because the children's claims in *Yool* were based on issues pertaining to a resulting trust, as opposed to any alleged liability of the

3

decedent mother, *Yool* found Section 366.2 inapplicable on this additional basis. *Yool, supra* at 874-76 ("Here the case framed by the petition filed by the special administrator called for imposition of a resulting trust. The allegations did not state a cause of action 'on a liability of the person' as is required to invoke the limitation period of Code of Civil Procedure section 366.2, subdivision (a). Liability of the person, or 'personal liability' means '[l]iability for which one is personally accountable and for which a wronged party can seek satisfaction out of the wrongdoer's personal assets.' (Black's Law Dict. (8th ed.2004) p. 933.)").  In the instant case, on the other hand, Plaintiffs' claims are clearly based on the alleged liability of decedent Detective Gilbert Parra.  Therefore, Plaintiffs' reliance on *Yool* is misplaced on this additional basis.

    *Bradley v. Breen*, 73 Cal.App.4th 798 (1999), discussed in *Yool,* is more applicable to the types of claims involved in the instant case.  In *Bradley*, an extended statute of limitations allowed the plaintiffs to bring a personal injury action against the defendants for allegedly aiding and abetting a child molestor. *Id*. at 800.  When the defendants cross-complained against the child molestor's estate for equitable indemnity (since he had died over a year prior), the Court held that the cross-complaint was time-barred under § 366.2 — despite the cross-complainants' assertions that they could not have brought their cross-complaint any sooner.  *Id*.  In interpreting the language in § 366.2 that states its limitations apply to actions "whether accrued or not accrued," *Bradley* presumed that the "legislature was well aware of the usual rules on accrual of actions" and had made a public policy determination to enact the statute, despite the possibility that in a rare case (like the instant case) an action may be foreclosed.  *Id*. at 804-806.

    Thus, Plaintiffs' reliance on *Heck v. Humphrey*, 512 U.S. 477 (1994), to argue that their § 1983 claim had not yet accrued until after Gilbert Parra's death is irrelevant.  Because the California Legislature added the "whether accrued or not accrued" language in a 1996 amendment,  it must be presumed that the

1    California Legislature was aware of the 1994 Supreme Court decision and the

2    possibility of dormant § 1983 claims.  In doing so, the Legislature made the

3    public policy determination that C.C.P. § 366.2 would nevertheless apply, even if

4    some rare claims were precluded.[2]

5        Plaintiffs also erroneously argue that the requirements of C.C.P. § 366.2

6    and Probate Code §§ 9000, *et seq*., should be cast aside because (a) the Probate

7    Code did not contemplate a situation like the one in the instant case; and (b) the

8    Probate Code violates the Supremecy clause by interfering with § 1983 litigation.

9    _____

10   [2]    Plaintiffs' tangential argument that further litigation is needed to determine

11   if Plaintiffs may file a late claim under Probate Code §§ 9053, 11429, or 9392 is

12   misleading and inapplicable because it **fails to take into account all the**

13   **requirements** of the selected Probate Code sections.  Plaintiffs omitted the

     section of Probate Code § 9053(b)(3)(A) that allows a personal representative to

14   be liable to a creditor only if "within 16 months after letters were first issued to a

15   general representative," the creditor "[f]iled a petition requesting that the court in

     which the estate was administered make an order determining the liability of the

16   personal representative under this subdivision."  It is Plaintiffs' responsibility to

17   establish that the jurisdictional requirements are met, however, Plaintiffs did not

     allege in the First Amended Complaint that a claim or petition was filed against

18   Gilbert Parra's estate or personal representative; nor have Plaintiffs asserted in

19   their opposition papers to the instat Motion that a claim or petition was filed.

     Because Gilbert Parra died in 2003 and his estate was closed in 2008, it is well

20   past the 16 months to file a petition.  Moreover, Section 11429(b) states

21   "[n]othing in this section precludes recovery against the personal representative

     personally or on the bond, if any, by a creditor who is not paid, subject to Section

22   9053."  Since Plaintiffs have not met the requirements in Section 9053, Section

23   11429 is inapplicable.

         Finally, Plaintiffs fail to mention that Section 9392(a)(3) provides that a

24   distribute is personally liable for the claim of a creditor only if "[t]he statute of

25   limitations applicable to the claim under Section 366.2 of the Code of Civil

26   Procedure has not expired at the time of commencement of an action under this

     section."  Plaintiffs have not alleged or asserted that they commenced an action

27   under this section prior to the expiration of C.C.P. § 366.2 and, as explained

28   above and in Defendants' moving papers, Plaintiffs' claims are barred by C.C.P.

     § 366.2.  Therefore, Section 9392 is inapplicable.

As explained above, the California Legislature is presumed to be aware of the law, and the Legislature made a public policy decision in enacting CCP § 366.2, even if it was possible a rare case would be foreclosed.  *See, Bradley*, 73 Cal.App.4th at 804-806.  To usurp the Legislature's decision would be misguided, stretch beyond the normal rules of statutory interpretation, and improperly interfere with the duly apportioned power of the Legislature to enact laws.

Plaintiffs' reliance on *Burnett v. Grattan*, 468 U.S. 42 (1984) is misplaced.  The question in *Burnett* was "whether a state law, establishing a procedure for administrative resolution of employment discrimination complaints, provides an appropriate statute of limitations" for § 1983 actions.  *Id*. at 43.  The public policy considerations behind the administrative law in *Burnett* were the "prompt identification and resolution of employment disputes" and "conciliation and private settlement through the agency's intervention in live disputes."  *Id*. at 54.  However, the considerations in *Burnett*, akin to state tort claims filing statutes which encourage early settlement, are completely different than the public policy considerations behind C.C.P. § 366.2 — to promote expeditious estate administration and security of title for distributees.[3]  Accordingly, because of the stark differences between the objectives of the state law in *Burnett* and C.C.P. § 366.2, *Burnett* does not apply to the instant case.

Furthermore, unlike here, there was no question in *Burnett* that the person or entity (upon which state administrative law complaints were made) was subject to § 1983 litigation.  In the instant case, California law provides that **an estate or**

---

[3] *See*, *Levine v. Levine*, 102 Cal.App.4th 1256, 1263-64 (2002) ("[T]he drafters of former section 353 and current section 366.2 believed the limitation period the statute imposes serves 'the strong public policies of expeditious estate administration  and security of title for distributees'"); *see also, Bradley v. Breen*, 73 Cal.App.4th 798, 805-06 (1999) ("one-year statute of limitations will best effectuate the strong public policy of expeditious and final estate administration").

6

1    **personal representative cannot be sued unless a claim is filed in probate**

2    **court**.[4]  Because probate law is solely reserved to the states, state law must

3    determine whether a decedent's estate and/or personal representative are able to

4    be sued in the first place.  This unique distinction regarding California probate

5    law also renders the reasoning in *Burnett* inapplicable.

6              Lastly, the California Probate Code does not conflict with § 1983 litigation.

7    In *Boyle v. County of Kern*, *supra*, the Court addressed the same argument as here

8    in ruling that the plaintiffs' § 1983 claims were barred because of their failure to

9    timely file a creditor's claim against a decedent police officer's estate pursuant to

10   Probate Code §§ 9000, *et seq*.  In dismissing the estate, the Court held that the

11   Probate Code did not conflict with § 1983 and was not preempted by the

12   Supremacy Clause because "[p]robate is inherently a matter of local concern

13   reserved to the States" and there was no federal probate code to make it

14   impossible for a party to comply with both federal and state law.  *Id*. at *8.  Here,

15   probate law is still a matter reserved to the states, the California Legislature made

16   a public policy determination in limiting claims "whether accrued or not

17   accrued," and Plaintiffs failed to follow the proper procedures in the state probate

18   proceedings.  Therefore, Plaintiffs' claims against Eric Parra are barred by C.C.P.

19   § 366.2 and Probate Code §§ 9000, *et seq*.

20

21

22   _____

23   [4] *See*, Cal. Prob. Code § 9351 ("An action may not be commenced against a

24   decedent's personal representative on a cause of action against the decedent
     unless a claim is first filed as provided in this part and the claim is rejected in

25   whole or in part"); *Boyle v. County of Kern,* 2008 WL 220413, *7 (E.D.Cal.

26   2008) ("Before a creditor may commence a lawsuit against an estate, the creditor
     must file a claim.... Filing a lawsuit against an estate is not the equivalent of filing

27   a probate claim." (Citing *Van Ort v. Estate of Stanewich,* 92 F.3d 831, 841 (9th

28   Cir.1996)).

7

**B.**    **Plaintiffs Have Not And Cannot Establish That Gilbert Parra Is Covered By Insurance For Purposes Of Probate Code § 550**.

In an attempt to circumvent the bar of their claims by C.C.P. § 366.2, Plaintiffs erroneously argue that Probate Code § 550 allows for their untimely claims to survive because decedent Detective Gilbert Parra was covered by insurance, namely, the indemnification provisions of California Government Code §§ 825 and/or 995. Althought this argument was anticipated and specifically addressed in Defendants' moving papers, Plaintiffs still could provide no satisfactory justification why their Probate Code § 550 argument is not nullified by *Pelayo v. City of Downey*, 570 F.Supp.2d 1183 (C.D. CA 2008). In asserting that the indemnification provisions of Gov. Code § 825 should be treated as "insurance" for purposes of applying Probate Code § 550, Plaintiffs gloss over the one significant difference between indemnification under Gov. Code § 825 and insurance — that indemnification under Gov. Code § 825 is not automatic and "is **not triggered unless the employee makes an affirmative request** for a defense in writing at least ten days before trial." *Pelayo*, 570 F.Supp.2d at 1196 (emphasis added).[5] Therefore, even if Gov. Code § 825 could be considered "insurance" for purposes of Probate Code § 550, Plaintiffs must assert and prove that Gilbert Parra requested indemnification or Gov. Code § 825 is not triggered.[6]

_____

[5] *See also,* Gov. Code § 825 (". . . if an employee or former employee of a public entity **requests** the public entity to defend him or her against any claim or action against him or her . . . the public entity shall pay any judgment based thereon or any compromise or settlement of the claim or action to which the public entity has agreed.") (emphasis added); Gov't Code § 995 (". . . **upon request** of an employee or former employee, a public entity shall provide for the defense of any civil action or proceeding brought against him . . . .") (emphasis added).

[6] Plaintiffs' assertion that Gov. Code § 825 constitutes "insurance" under Probate Code § 550 also practically ignores the realities of liability insurance coverage

In *Pelayo*, the Court held that the plaintiff, who was asserting a § 1983 claim against the City of Downey and a deceased police officer, did not meet his burden of establishing that the deceased police officer was entitled to coverage under the City's duty to indemnify pursuant to Gov. Code § 825 because the plaintiff could not show that the deceased police officer initiated Gov. Code § 825 via a request for indemnification from the City.  *See*, *Pelayo*, 570 F.Supp.2d at 1185, 1194-1195, 1197.  In short, the Court held that the plaintiff "has failed to demonstrate that [the deceased police officer] has any insurance protection covering an award of damages against him on the § 1983 claim."  *Id*. at 1197.  Therefore, the plaintiff could not recover any damages under Probate Code § 550 from the deceased police officer's estate or the City.  *Id*. at 1199.

Here, just like *Pelayo*, Plaintiffs have not and cannot show that Gilbert Parra has any insurance protection.  Because Gilbert Parra is deceased, he cannot request in writing indemnification from the County and, thus, Gov. Code § 825 is not invoked.  Moreover, nothing in Gov. Code § 825 allows for surviving family members of the deceased employee (i.e., Eric Parra) to submit the request for indemnification.  Due to the fact that Plaintiffs' claims are time-barred under CCP 366.2 and Prob. Code §§ 9000, *et seq.*, it would defy logic for Eric Parra to submit a request for indemnification that only renews Plaintiffs' claims.

---

limits versus the unlimited liability of self-insured public entities.  Normal liability insurance coverage consists of a pool of money contributed by each insured and is limited to a certain recovery amount.  Probate Code § 550 specifically addressed this type of insurance coverage because the Law Revision Commission Comment to Probate Code § 550 contemplates that insurance coverage under that section is limited to the coverage limits.  *See*, Law Revision Commission Comment, Cal. Prob. Code § 550 ("If the plaintiff seeks damages in excess of the insurance policy limits, the plaintiff must file a claim and establish the liability other than under this chapter.")  On the other hand, the "policy limit" for a self-insured public entity would be unlimited.  Thus, to use Probate Code §

1    Plaintiffs, however, erroneously imply that because the same counsel

2    represents all Defendants, Eric Parra must have requested indemnification, and,

3    further, that the absence of a request for indemnification is immaterial because the

4    County received notice.  Regardless of Plaintiffs' insinuations and their assertion

5    that notice somehow trumps the holding in *Pelayo*, the law remains clear:

6    Plaintiffs "bear the burden of proving that insurance coverage exists" for purposes

7    of Probate Code § 550, *Pelayo* at 1193, and absent a written request, the duty to

8    indemnify under Gov. Code § 825 is not triggered, thus, the public entity is not

9    the employee's insurer.  Indeed, the Court in *Pelayo* rejected the same implied

10    argument.  *Pelayo*, 570 F.Supp.2d at 1197 n. 97.  *Pelayo* reasoned the plaintiff

11    was still required to establish that a request for defense was made and because the

12    City just as easily could have voluntarily elected to represent the deceased officer

13    in the action, "there is no indication that the City's indemnification obligations

14    under [Gov. Code] § 825(a) would be triggered." *Id*.  Accordingly, Plaintiffs'

15    implied argument falls flat and does not change the fact that Plaintiffs have failed

16    to show that Gilbert Parra was covered by insurance.[7]

17    Therefore, Plaintiffs' claims against Eric Parra are barred and should be

18

19    _____

20    550 in the context of the instant matter would frustrate the limitations envisioned
      by the Legislature when enacting Probate Code § 550.

21    [7] Plaintiffs attempt to support their argument by attaching the nonbinding decision
      of Judge Fischer in *Shortt v. County of Los Angeles*, CV-05484-DSF-JCG.

22    Despite the fact that Judge Fischer's ruling is not binding on this court, the

23    decision is erroneous because it not only glosses over the requirement in Gov.

24    Code § 825 that indemnity is triggered **only by a written request from the
      employee**, it ignores that Probate Code § 550 was intended to be limited to the

25    policy limits of the specific insurance policy at issue.  The ruling also incorrectly

26    distinguished *Pelayo* on this point. Although *Pelayo* did indicate that the
      plaintiffs should have sued the estate's personal representatives, the holding did

27    not suggest that such service would be sufficient to implicate Gov. Code § 825.

28    *Pelayo, supra*, at 1199.  To the contrary, *Pelayo* still noted that a written request
      for indemnification would be needed to trigger Gov. Code § 825.  *Id*.

1  dismissed.

2  **III.  DETECTIVES SMITH AND PARRA ARE ENTITLED TO**

3  **QUALIFIED IMMUNITY BECAUSE THE LAW WAS NOT**

4  **CLEARLY ESTABLISHED IN 1984 TO WHAT EXTENT, IF ANY,**

5  **THE OBLIGATIONS UNDER *BRADY* APPLIED TO POLICE**

6  **OFFICERS.**

7  Plaintiffs' opposition papers throw everything but the kitchen sink in an

8  attempt to argue that the law was clearly established in 1984 concerning the

9  constitutional obligations of police officers under *Brady v. Maryland*, 373 U.S. 83

10  (1963). Despite Plaintiffs' arguments, there was no clearly established Supreme

11  Court (much less Ninth Circuit) law **at the time of the underlying criminal**

12  **investigation in 1984** regarding to what extent, if any, police officers were bound

13  by the constitutional obligations applicable to prosecutors established in *Brady*.

14  As set forth in the moving papers and further explained below, the circuits are

15  split as to the extent these obligations apply to police officers.  Therefore,

16  Detectives J.D. Smith and Gilbert Parra are entitled to qualified immunity as to

17  Plaintiffs' *Brady* claims only.

18  **A.  Neither Supreme Court Precedent Nor Out-Of-Circuit Case Law**

19  **Clearly Established In 1984 That A Prosecutor's Obligations**

20  **Under *Brady* Also Applied To Police Officers**.

21  Plaintiffs' misleadingly argue that *Brady* itself clearly established that

22  police officers have the same duty as prosecutors not to suppress material,

23  exculpatory evidence.  (Pltfs' Opp. at 5-6.)  Plaintiffs fail to cite to any case on

24  this point and only rely on cases from after 1984 from two different circuits —

25  the Fifth Circuit in *Geter* (1988)[8] and the Seventh Circuit in *Newsome* (2001),

26  

27  

28  [8] 949 F.2d 1550 (5th Cir. 1988).

11

*Steidl* (2007), and *Jones* (1988)[9]. Plaintiffs ignore that when making a qualified immunity determination, courts must assess whether the law was "clearly established" by the case law **at the time of the alleged violation**. *Mattos v. Agarano*, 661 F.3d 433, 446 (9th Cir. 2011); *see also, Marsh v. Cnty. of San Diego*, *supra,* 680 F.3d at 1152 ("A plaintiff must also show that the federal right was 'clearly established' **at the time of the violation**, otherwise government officials are entitled to qualified immunity.") (emphasis added); *Alston v. Read*, *supra*; *Romero v. Kitsap County*, *supra*.

At the time of the underlying criminal investigation in 1984, Detectives Smith and Parra did not have had the benefit of Plaintiffs' above cited case law. As further discussed below, the fact the a number of published decisions since the 1984 investigation have held that the obligations under *Brady* **do not** apply to police officers only further undermines Plaintiffs' argument that the law was clearly established at the time of the 1984 investigation that the *Brady* obligations applicable to prosecutors also applied to police officers.

Indeed, while Plaintiffs point to four out-of-circuit cases, each post-1984, to support their argument that courts reviewing the state of the law before 1984 have held that a police officer's obligations under *Brady* were clearly established prior to 1984 (Pltfs' Opp. at 15-17),[10] Plaintiffs fail to acknowledge the

_____

[9] 256 F.3d 747 (7th Cir. 2001), 494 F.3d 623 (7th Cir. 2007), and 856 F.2d 985 (7th Cir. 1988) respectively.

[10] *Geter v. Fortenberry*, 949 F.2d 1550 (5th Cir. 1988); *McMillian v. Johnson*, 88 F.3d 1554 (11th Cir. 1996); *Goodwin v. Metts*, 885 F.2d 157 (4th Cir. 1989); and *Walker v. City of New York*, 974 F.2d 293 (2nd Cir. 1992). The citation to *Walker* is hardly evidence of "clearly established law" because the issue before the court was whether police have an independent *Brady* obligation to disclose exculpatory information to the defense. *Walker*, 974 F.2d at 299. Indeed, the court recognized that "*Brady* does not discuss the relative disclosure obligations of police and prosecutor" and the plaintiff in the case did "not allege, however, that

undeniable fact that the circuit courts throughout the United States are split on this issue.  In their moving papers, Defendants identified this circuit split and the unsettled state of the law by citing to *Gibson v. Superintendent of N.J. Dept. of Law & Pub. Safety-Div. of State Police*, 411 F.3d 427 (3d Cir. 2005), *Jean v. Collins*, 221 F.3d 656 (4th Cir. 2000),[11] *Taylor v. Waters*, 81 F.3d 429 (4th Cir. 1996), *Harris v. Kuba*, 486 F.3d 1010, 1012 (7th Cir. 2007), the analysis in *Moldowan v. City of Warren*, 578 F.3d 351, 363 (6th Cir. 2009),[12] *Moreta-Ramirez v. Lemert*, 156 F. Supp. 2d 138, 139 (D.P.R. 2001), and *D'Ambrosio v. Marino*, 2012 WL 4504523 (N.D. OH 2012).  Indeed, that the circuits are split on this issue further illustrates Defendants' position — that Detectives Smith and Parra are entitled to qualified immunity because the law was not clearly established at the time of the underlying criminal investigation in 1984 to what extent, if any, the obligations under *Brady* applied to police officers.  Where circuits are split on a particular legal issue and "'[i]f judges thus disagree on a

---

Detective Powell or any other police officer concealed any exculpatory evidence from the prosecution team." *Id*. at 298-299.

[11] Regardless of Plaintiffs' contention that Chief Judge Wilkinson's concurring opinion in *Jean* is not controlling authority, the simple fact that the *en banc* Fourth Circuit judges were split on the issue demonstrates the unsettled nature of the law.  Also, although the court in *Jean* noted the *Goodwin* case (which Plaintiffs argue shows that the law was established), the court also considered Plaintiffs' cited cases of *Walker*, *Geter*, *Jones*, and *McMillian*, and specifically held that "[t]hese cases have left unclear the exact nature of any duty that the law imposes on police with regard to exculpatory evidence." *Jean,* 221 F.3d at 659.

[12] Plaintiffs misconstrue Detectives Smith and Parra's reliance on *Moldowan*.  *Moldowan* is important because the Sixth Circuit held that as of 2009, it "had not yet directly addressed" the issue whether *Brady* should extend to investigating police officers and it cited cases reaching a similar holding.  *Id*. at 378, 381.  Thus, *Moldowan* shows that in 1984 there was an absence of clearly established

constitutional question, **it is unfair to subject police to money damages for picking the losing side of the controversy**.'"  *Pearson v. Callahan,* 555 U.S. 223, 245 (2009) (quoting *Wilson v. Layne,* 526 U.S. 603, 618 (1999)).

  **B.** **In 1984, There Was No Clearly Established Ninth Circuit Law Regarding The Extent A Prosecutor's Obligations Under *Brady* Applied To Police Officers.**

  Plaintiffs are mistaken in their argument that *United States v. Butler*, 567 F.2d 885 (9th Cir. 1978), constituted established law in the Ninth Circuit regarding a police officer's duties under *Brady*.  (Pltfs' Opp. at 7, 17-18.)  In *Butler*, the court reversed and remanded the denial of a criminal defendants' motion for new trial for prosecutorial misconduct because the prosecutor failed to disclose promises made to witnesses.  *Id*. at 891.  In so ruling, the court put the responsibility for the *Brady* obligations **on the prosecutor**, stating: "[t]he prosecutor is responsible for the nondisclosure of assurances made to his principal witnesses even if such promises by other government agents were unknown to the prosecutor."  *Id*.  Thus, *Butler* offers no support for Plaintiffs' argument because the case simply reiterated the rule established in *Brady* that **prosecutors** have a duty to disclose exculpatory evidence.

  Moreover, Plaintiffs present two red herring arguments regarding the historical establishment of a police officer's liability for a *Brady* violation because they fail to connect the prosecution's obligations under *Brady* with the police officer's obligations.  First, Plaintiffs argue that courts before 1984 held that a *Brady* violation occurs when the government fails to disclose evidence unknown to prosecutors but known to police.  (Pltfs' Opp. at 7-8.)  However, the cases are irrelevant to the issue in the instant case because none of them impose

law connecting the disclosure obligations for prosecutors under *Brady* to police officers.

14

the responsibility for a *Brady* violation on the police officers.[13]  Indeed, courts have consistently held that the responsibility under *Brady* was only attributed against the prosecutor or the state.  *See, Gibson*, 411 F.3d at 442 ("the *Brady* duty to disclose exculpatory evidence to the defendant applies only to a prosecutor.").

Second, Plaintiffs argue that police officers have always been bound by *Brady* (Pltfs' Opp. at 8-11), yet again failing to recognize that, prior to the 1995 Supreme Court decision in *Kyles v. Whitley,* 514 U.S. 419 (1995), there was a dearth of legal authority discussing to what extent, if any, the obligations under *Brady* applied to police officers.  As discussed in the moving papers, even since the *Kyles* decision, courts are still confused to what extent, if any, *Brady* applies to police officers. *See, e.g., Moreta-Ramirez v. Lemert,* 156 F.Supp.2d 138 (D. Puerto Rico 2001) (holding police officers' obligation under *Brady* to disclose exculpatory evidence to the criminal justice system, including prosecutors, was not clearly established at the time of the alleged violation in 2001); *D'Ambrosio v. Marino*, 2013 WL 256312 (N.D. OH 2013) ("as a matter of law, [the detective]

---

[13] *See, Barbee v. Warden, Md. Penitentiary*, 331 F.2d 842, 846 (4th Cir. 1964) ("[t]he **duty to disclose is that of the state**, which ordinarily acts through the prosecuting attorney; but if he too is the victim of police suppression of the material information, the state's failure is not on that account excused") (emphasis added); *Imbler v. Craven*, 298 F. Supp. 795, 806 (C.D. Cal. 1969) *aff'd sub nom. Imbler v. State of Cal.*, 424 F.2d 631 (9th Cir. 1970) ("the **prosecution is charged** with the knowledge of its agents including the police") (emphasis added); *United States v. Endicott*, 869 F.2d 452 (9th Cir. 1989) (government agents' "knowledge [of false testimony] can be **imputed to the prosecutors**") (emphasis added); *United States v. Hsieh Hui Mei Chen*, 754 F.2d 817 (9th Cir. 1985) ("**prosecution must disclose** any information within the possession or control of law enforcement personnel") (emphasis added); *Freeman v. State of Ga.*, 599 F.2d 65, 69 (5th Cir. 1979) (imputing the policeman's conduct upon the state); *U.S. ex rel. Smith v. Fairman*, 769 F.2d 386 (7th Cir. 1985) (the "fact that the prosecutor in this case was blameless therefore does not justify the **State's failure to produce**" the evidence) (emphasis added).

had no duty under *Brady* to turn exculpatory evidence over to criminal counsel.").

Plaintiffs' additional argument that *Kyles* did not clarify that *Brady* imposes direct obligations upon police officers (Pltfs' Opp. at 11-13), ignores the fact that the circuits which have found a *Brady* obligation applies to police officers have consistently identified *Kyles* as the Supreme Court case which established this law.[14]  *See*, *Drumgold v. Callahan,* 707 F.3d. 28, 38 (1st Cir. 2013) (*Kyles* was the Supreme Court case which "clarified that this affirmative disclosure obligation also encompasses evidence known only to law enforcement officers and not to prosecutors."); *Haley v. City of Boston*, 657 F.3d. 39, 48 (1st Cir. 2011) ("The [Supreme Court] did not clarify that the *Brady* duty imposed on prosecutors bore any relation to disclosure by police officers until [1995].").  To be sure, the text Plaintiffs quote from *Kyles* — that if the state was not accountable for evidence known only to police it would "amount to a serious change of course from the *Brady* line of cases" — at most supports the argument that post-*Brady* cases may have evolved towards such a holding, not that *Brady* itself had actually held so.[15]

_____

[14] As noted in the moving papers, in *Kyles,* State of Louisiana argued that "some of the favorable evidence in issue here was not disclosed even to the prosecutor until after trial…and it suggested below that it should not be held accountable under *Bagley* and *Brady* for evidence **known only to police investigators** and not to the prosecutor."  *Kyles, supra* at 438 (emphasis added).  Notably, the Supreme Court in *Kyles* did not reject this argument by holding that police officers had already been constitutionally bound by *Brady,* but instead rejected this argument by reiterating the breadth of a **prosecutor's** duties under *Brady*.  *Id.*

[15] Plaintiffs further argue that the Supreme Court's wording in *California v. Trombetta*, 467 U.S. 479 (1984) somehow suggests that the obligation of police officers under *Brady* was clearly established in 1984.  (Pltfs' Opp. at 13-14.)  Plaintiffs' reliance on *Trombetta* is inapposite because the quoted language is out-of-context dicta.  *Trombetta* only held that due process did not require the government to take affirmative steps to preserve evidence on behalf of criminal

16

Furthermore, Plaintiffs incorrectly assert that the non-disclosure of exculpatory evidence is a singular constitutional violation, citing the Sixth Circuit *Moldowan* case and a Seventh Circuit case.[16]  (Pltfs' Opp. at 14-15.)  To the contrary, the Sixth Circuit in *Jean* disputed this assertion, stating that only recent cases have pointed towards a duty that "a police officer independently violates the Constitution by withholding from the prosecutor evidence acquired during the course of an investigation."  *Jean*, 221 F.3d at 659.  Once again, the fact that the circuits are still split on this issue supports Detectives Smith and Parra's position that the legal issue was not clearly established in 1984.

Finally, Plaintiffs' reliance on *Tennison*[17] is overbroad and inapplicable to the instant case.  (Pltfs' Opp. at 4-5.)  Although *Tennison* does not rely on a single case that predates the 1995 decision in *Kyles v. Whitley*, Plaintiffs improperly attempt to expand the holding in *Tennison* by asserting that the citation to the 2001 Seventh Circuit case *Newsome v. McCabe* implies that the law was clearly established before 1984.  Of course, in 1984, Detectives Smith and Parra would have been unable to make the same implication because *Newsome* was decided in 2001.  Additionally, although the Seventh Circuit in *Newsome* held that the law was clearly established in 1979-1980, the analysis in *Tennison* failed to take into account the **multiple other circuits which have held that the law was not clearly established, much less as early as 1984**.  *See*, *Gibson*, 411 F.3d at 431 (3d Cir. 2005) (law not clearly established at the time of the alleged violation in 1994); *Jean*, 221 F.3d at 658 (4th Cir. 2000) (law not clearly established at the time of the alleged violation in 1982); *Harris*, 486 F.3d at 1017 (7th Cir. 2007)

---

defendants, not that police officers were directly obligated under *Brady* to disclose evidence to the prosecution.  *See*, *Trombetta*, 467 U.S. at 486.

[16] *Fields v. Wharrie*, 672 F.3d 505 (7th Cir. 2012).

[17] *Tennison v. City & County of San Francisco*, 570 F.3d 1078 (9th Cir. 2009).

17

1    (refusing to extend *Brady* obligations to police officers in 2007 for alleged

2    violation in 1979); *Moreta-Ramirez*, 156 F.Supp.2d at 142 (D.Puerto Rico 2001)

3    (law not clearly established at the time of the alleged violation in 2001);

4    *D'Ambrosio*, 2012 WL 4504523 (N.D. Ohio 2012) (law not clearly established at

5    the time of the alleged violation in 1988).  *Tennison's* holding is flawed because

6    by cherry picking the cases it relied upon and not considering the clear

7    disagreement amongst the various circuits on the issue, it ignored United State

8    Supreme Court qualified immunity precedent that holds, in the absence of

9    controlling authority, if circuit courts are split on a particular legal issue "**it is**

10   **unfair to subject police to money damages for picking the losing side of the**

11   **controversy.**'"  *Pearson v. Callahan*, 555 U.S. 223, 245 (2009) (emphasis

12   added.)

13        Moreover, civil liability cannot be imposed on police officers for their

14   failure to accurately predict how a constitutional question will eventually be

15   resolved.  *See, Freitas v. Stone*, 818 F.Supp. 1333, 1341 (D. HI 1993) ("Though

16   they are charged with knowledge of constitutional developments, government

17   officials are **not required to predict the future course of constitutional law**.")

18   (emphasis added) (citing *Bilbrey by Bilbrey v. Brown*, 738 F.2d 1462, 1465 (9th

19   Cir. 1984) (quoting *Wood v. Strickland*, 420 U.S. 308, 322 (1975)).  Accordingly,

20   and contrary to Plaintiffs' assertions, there is no holding in *Tennison* that the law

21   was clearly established in 1984.[18]  To the extent Plaintiffs infer such a holding,

22   the analysis in *Tennison* is fundamentally flawed because it failed to consider the

23   circuit split on the issue, as required in a qualified immunity analysis.[19]

24   _____

25

26   [18] Especially because the facts in *Tennison* dealt with a 1990 investigation.

27   [19] In fact, as pointed out in Defendants' moving papers, the scope and analysis in

28   *Tennison* may not be as broad as Plaintiffs assert.  In a case currently being

     litigated by the same Plaintiffs' counsel, *Carrillo v. County of Los Angeles*,

The core inquiry for courts to determine if a constitutional violation was "clearly established" for purposes of qualified immunity requires assessment of the case law **at the time of the alleged violation**. *See, Mattos v. Agarano*, 661 F.3d 433, 446 (9th Cir. 2011) ("We begin our inquiry into whether this constitutional violation was clearly established by looking at the most analogous case that existed [at the time of the constitutional injury]"); *Surrels v. McKee*, 290 F.3d 965, 970 (9th Cir. 2002) (beginning qualified immunity analysis by "surveying the legal landscape as it existed in 1997 and 1998," the time of the purported constitutional violation). In 1984, there was no clearly established case law in the Supreme Court, Ninth Circuit, or through a consensus of other circuits that police officers had the same obligations under *Brady* as prosecutors. At the most, other circuit courts have split on this issue in the 29 years since. Therefore, Detectives Smith and Parra are entitled to qualified immunity as a matter of law on Plaintiffs' *Brady* claims.

## IV.   **CONCLUSION.**

For each and all of the foregoing reasons, and the reasons in the initial moving papers, Defendants J.D. Smith and Eric Parra respectfully request that this Court dismiss Plaintiffs' claims for relief under *Brady v. Maryland* in the First Amended Complaint against these Defendants with prejudice.

Dated:  August 30, 2013         LAWRENCE BEACH ALLEN & CHOI PC

By:  /s/ *Michael D. Allen*
         Michael D. Allen
Attorneys for Defendants,
COUNTY OF LOS ANGELES, J.D. SMITH and
ERIC PARRA

---

*docket* No. 12-57229 (9th Cir. 2012), even though the instant issue of qualified immunity was denied in the district court, the Ninth Circuit overruled the district court's granting of a motion to deem the appeal frivolous and stayed the proceedings pending the Ninth Circuit's resolution of the issue. (*See*, Declaration of Michael D. Allen, ¶¶ 6-7, Exhibit "C".)

19