UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

```
FRANK O'CONNELL, NICHOLAS      )
O'CONNELL,                     )
                               )
          Plaintiffs,          )
                               )
       vs.                     ) Case No.
                               ) 13-CV-01905-
J.D. SMITH; ESTATE OF GILBERT  ) MWF (PJWx)
PARRA; ERIC PARRA, COUNTY OF   )
LOS ANGELES AND DOES 1-10,     )
                               )
          Defendants.          )
_____)
```

DEPOSITION OF MIKE BUMCROT

Pasadena, California

Wednesday, December 21, 2016

REPORTED BY:

JEAN KIM
CSR NO. 13555, RPR

JOB NO.
86942KAY

**Ex. 616-1**

1            UNITED STATES DISTRICT COURT

2            CENTRAL DISTRICT OF CALIFORNIA

3

4    FRANK O'CONNELL, NICHOLAS        )
     O'CONNELL,                       )
5                                     )
              Plaintiffs,             )
6                                     )
         vs.                          ) Case No.
7                                     ) 13-CV-01905-
     J.D. SMITH; ESTATE OF GILBERT    ) MWF (PJWx)
8    PARRA; ERIC PARRA, COUNTY OF     )
     LOS ANGELES AND DOES 1-10,       )
9                                     )
              Defendants.             )
10   _____)

11

12        Deposition of MIKE BUMCROT, taken on behalf of

13   the Plaintiffs, at 234 East Colorado Boulevard,

14   Suite 230, Pasadena, California, commencing at

15   10:02 a.m., on Wednesday, December 21, 2016, before

16   Jean Kim, CSR No. 13555, RPR, a Certified Shorthand

17   Reporter in and for the County of Los Angeles,

18   State of California.

19

20

21

22

23

24

25

         **LUDWIG KLEIN REPORTERS & VIDEO, INC. - 800.540.0681**            2

                                                          **Ex. 616-2**

```
 1   APPEARANCES:

 2

 3   FOR PLAINTIFFS:
          KAYE, McLANE, BEDNARSKI & LITT
 4        BY:  BARRETT S. LITT
               Attorney at Law
 5             -and-
               LINDSAY BATTLES
 6             Attorney at Law
          234 Colorado Boulevard
 7        Suite 230
          Pasadena, California 91101
 8        626.844.7600

 9
     FOR DEFENDANTS:
10        LAWRENCE BEACH ALLEN & CHOI, PC
          BY:  DENNIS M. GONZALES
11             Attorney at Law
          100 West Broadway
12        Suite 1200
          Glendale, California 91210
13        818.545.1925

14
     ALSO PRESENT:
15        JON SEIDEL, Videographer

16

17

18

19

20

21

22

23

24

25
```

**Ex. 616-3**

1                          I N D E X

2    EXAMINATION BY:                                    PAGE

3    MR. LITT                                              7

4

5                        E X H I B I T S

6                                                       PAGE

7    Exhibit 424   Second Amended Notice of              11
                   Deposition of PMKs (11 pages)
8
     Exhibit 425   Summary of LASD Departmental          39
9                  Policy/Training Documents
                   Produced - O'Connell v. Smith
10                 (4 pages)

11   Exhibit 426   J.D. Smith, List of trainings        128
                   received as of August 1987,
12                 Bates labeled D9555 and D9556
                   (2 pages)

13

14

15                   PREVIOUSLY MARKED EXHIBITS

16                                                      PAGE

17   Exhibit 9     City of South Pasadena              139
                   Inter-Office Correspondence,
18                 Bates labeled D3195 and D3196
                   (2 pages)
19
     Exhibit 16    Color photocopy of two              144
20                 side-by-side polaroids (1 page)

21   Exhibit 353   Color photocopy of two              144
                   photographs showing
22                 Ford station wagon (1 page)

23   Exhibit 401   Basic Course Unit Guide, 23,         91
                   Report Writing, Bates labeled
24                 D7018 through D7108 (91 pages)

25

1               I N D E X (Continued)

2

3

4            INFORMATION TO BE SUPPLIED

5                    (None)

6

7

8               QUESTIONS MARKED

9                    (None)

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

**Ex. 616-5**

MIKE BUMCROT - December 21, 2016
O'CONNELL VS. SMITH

```
 1      Pasadena, California; Wednesday; December 21, 2016
 2                          10:02 a.m.
 3
 4           THE VIDEOGRAPHER:  We are on the record at        10:02:09
 5      10:02 a.m.                                             10:02:11
 6           Good morning.  This is the video deposition       10:02:12
 7      of Mike Bumcrot, taken on behalf of the plaintiff,     10:02:14
 8      in the matter of O'Connell versus Smith, Case Number   10:02:17
 9      13-CV-01905-MWF (PJWx).                                10:02:22
10           Today's date is Wednesday, December 21,           10:02:27
11      2016.  We are located at 234 East Colorado Boulevard   10:02:31
12      in Pasadena, California.                               10:02:36
13           My name is Jon Seidel with Ludwig Klein           10:02:37
14      Reporters & Video, located at 1450 West Colorado       10:02:39
15      Boulevard, in Pasadena, California.                    10:02:43
16           Will all counsel please identify themselves       10:02:44
17      for the record.                                        10:02:47
18           MR. LITT:  Barry Litt for the plaintiffs.         10:02:48
19           MS. BATTLES:  Lindsay Battles for the             10:02:51
20      plaintiffs.                                            10:02:53
21           MR. GONZALES:  Dennis Gonzales for defense.       10:02:54
22           THE VIDEOGRAPHER:  Thank you.                     10:02:54
23           THE REPORTER:  Raise your right hand for          10:02:54
24      me, please.                                            10:02:54
25           Do you declare under penalty of perjury to        10:02:54
```

Ex. 616-6

**MIKE BUMCROT - December 21, 2016**
**O'CONNELL VS. SMITH**

| | | |
|---|---|---|
| 1 | tell the truth, the whole truth, and nothing but the | 10:02:54 |
| 2 | truth? | 10:03:01 |
| 3 | THE WITNESS:  Yes, I do. | 10:03:01 |
| 4 | THE REPORTER:  Thank you. | 10:03:03 |
| 5 | | 10:03:03 |
| 6 | EXAMINATION | 10:03:03 |
| 7 | BY MR. LITT: | 10:03:03 |
| 8 | Q    Mr. Bumcrot, would you state and spell your | 10:03:06 |
| 9 | full name for the record. | 10:03:09 |
| 10 | A    Mike Bumcrot, M-i-k-e B-u-m-c-r-o-t. | 10:03:10 |
| 11 | Q    And have you been deposed before? | 10:03:18 |
| 12 | A    Many times. | 10:03:21 |
| 13 | Q    Do you have an estimate of how many times? | 10:03:22 |
| 14 | A    I would say 40. | 10:03:24 |
| 15 | Q    And how many of those occasions have you -- | 10:03:27 |
| 16 | has it been in your capacity as an employee of the | 10:03:33 |
| 17 | sheriff's -- LA Sheriff's Department? | 10:03:37 |
| 18 | A    Well, probably only about ten as an | 10:03:41 |
| 19 | employee of the sheriff's department. | 10:03:48 |
| 20 | Q    And it's my understanding that you work | 10:03:51 |
| 21 | part-time for the sheriff's department.  Is that | 10:03:55 |
| 22 | right? | 10:03:57 |
| 23 | A    Yes.  I'm a hireback. | 10:03:57 |
| 24 | Q    And it's also my understanding that, in | 10:04:00 |
| 25 | addition to that, you act as an expert witness? | 10:04:01 |

**Ex. 616-7**

**MIKE BUMCROT - December 21, 2016**
**O'CONNELL VS. SMITH**

1      Q      Were there -- so -- and from what range of          10:17:47

2    options were classes available?                             10:17:53

3      A      Well, some -- some of us were sent to the          10:17:58

4    DOJ homicide school in San Jose.  It was a week-long        10:18:01

5    homicide class.  Not everyone attended that.  Most          10:18:06

6    training was done on the job.                               10:18:09

7      Q      Other than the DOJ homicide school and the         10:18:16

8    academy, were there any other courses that a                10:18:23

9    significant percentage of homicide detectives took?        10:18:30

10     A      Not necessarily courses, but training              10:18:36

11   classes that are -- like, the lab would say -- they         10:18:42

12   would put out a briefing saying, "We're going to            10:18:45

13   have a blood splatter class" -- "a four-hour blood          10:18:47

14   splatter class," and the people who weren't working         10:18:53

15   their cases that could break free would go to the           10:18:54

16   lab and attend classes like that.  The coroner would        10:18:58

17   have classes.  The DA -- the DA's office would have         10:18:59

18   classes.                                                    10:19:03

19           So you would attend different training type         10:19:03

20   of classes, depending on your availability.                 10:19:05

21     Q      And if I'm understanding you correctly,            10:19:08

22   none of those were mandatory classes.  It was if --        10:19:11

23   if a class was available, a person was interested           10:19:15

24   and had the time.  Is that how it worked?                   10:19:18

25     A      Yes, sir.                                          10:19:22

Ex. 616-17

**MIKE BUMCROT - December 21, 2016**
**O'CONNELL VS. SMITH**

| | | | |
|---|---|---|---|
| 1 | 1982, it was one way, and then after that it was a | | 10:25:48 |
| 2 | different way -- | | 10:25:50 |
| 3 | A | Okay. | 10:25:52 |
| 4 | Q | -- you should indicate.  If not, then I'll | 10:25:52 |
| 5 | assume that the answer applies to the whole period. | | 10:25:56 |
| 6 | A | All right. | 10:25:59 |
| 7 | Q | Okay? | 10:26:00 |
| 8 | A | Okay. | 10:26:00 |
| 9 | Q | Is that reasonable? | 10:26:00 |
| 10 | A | Yes. | 10:26:01 |
| 11 | Q | So let's start with that. | 10:26:01 |
| 12 | | In the early '80s -- excuse me -- what was | 10:26:03 |
| 13 | done to ensure that police officers understood and | | 10:26:08 |
| 14 | followed their constitutional obligations? | | 10:26:10 |
| 15 | A | Well, it was all starting with the academy. | 10:26:14 |
| 16 | All training, in-service training, the actual -- a | | 10:26:19 |
| 17 | lot of in-service training from the district | | 10:26:25 |
| 18 | attorney's office.  They would send over training | | 10:26:28 |
| 19 | memos to the homicide bureau that was put on a | | 10:26:31 |
| 20 | briefing board that was required reading of everyone | | 10:26:33 |
| 21 | in the homicide bureau. | | 10:26:35 |
| 22 | | You had to initial -- each team would get a | 10:26:36 |
| 23 | copy of the training memo, and each individual on | | 10:26:41 |
| 24 | that team would initial to signify that they had | | 10:26:44 |
| 25 | read the training memo. | | 10:26:49 |

**Ex. 616-22**

**MIKE BUMCROT - December 21, 2016**
**O'CONNELL VS. SMITH**

| | | |
|---|---|---|
| 1 | Q    And what did the training memos address | 10:26:52 |
| 2 | on -- I'm now limiting my question to on the | 10:26:57 |
| 3 | constitutional responsibilities of police officers. | 10:27:00 |
| 4 | A    Mostly case law.  Some would be problems | 10:27:03 |
| 5 | that had come up in court on other cases, kind of a | 10:27:08 |
| 6 | don't-do-it-this-way type of a briefing.  But mostly | 10:27:13 |
| 7 | just case law. | 10:27:19 |
| 8 | Q    And I take it that that was mostly in the | 10:27:22 |
| 9 | Fourth Amendment area? | 10:27:27 |
| 10 | A    It was everything, including search and | 10:27:27 |
| 11 | seizure, including Brady, including -- including | 10:27:31 |
| 12 | lineup procedures. | 10:27:40 |
| 13 | Q    So are -- so are you indicating that there | 10:27:40 |
| 14 | were regular training memos on Brady in the period | 10:27:45 |
| 15 | of time in the early '80s for -- in the academy? | 10:27:50 |
| 16 | A    Oh, in the academy.  No, I don't recall | 10:27:57 |
| 17 | Brady even being brought up in the academy. | 10:28:01 |
| 18 | Q    Okay.  Well, once we're out of the academy, | 10:28:04 |
| 19 | these training memos that you're referring to, | 10:28:13 |
| 20 | describe them.  How were they -- were they for | 10:28:16 |
| 21 | classes?  I mean, what are they for? | 10:28:21 |
| 22 | A    Well, I'm speaking for homicide only. | 10:28:22 |
| 23 | Q    Okay. | 10:28:25 |
| 24 | A    If you were working the jail or patrol, I | 10:28:25 |
| 25 | don't recall getting training memos from the DA's | 10:28:29 |

**Ex. 616-23**

**MIKE BUMCROT - December 21, 2016**
**O'CONNELL VS. SMITH**

1    office in either of those assignments.                10:28:31

2              But once you became a detective, you would    10:28:34

3    get these training memos from the DA's office.  I     10:28:37

4    recall in narcotics getting some that were mostly --  10:28:40

5    mostly having to do with search and seizure.          10:28:44

6              And once being assigned to homicide, we got  10:28:48

7    numerous training memos from the DA's office that,    10:28:52

8    like I said, we would have to read and initial that   10:28:57

9    we had read them.                                     10:29:00

10    Q    And when you read and initialed them, would      10:29:00

11   they go into your personnel file?                     10:29:04

12    A    I don't know that.  I don't believe so.  I       10:29:05

13   think it was -- it was just put in on the training    10:29:08

14   board, you would initial it, and the lieutenants who  10:29:13

15   are in charge of each team would be responsible to    10:29:17

16   make sure everyone had initialed.                     10:29:19

17    Q    So in what documents, if any, in the early      10:29:21

18   1980s set out this process that you're describing?    10:29:27

19              And, by that, I mean, was there any -- is    10:29:33

20   there any document in the sheriff's department from   10:29:37

21   this time period, the early 1980s, that said you're   10:29:42

22   periodically going to be receiving -- I don't mean    10:29:49

23   these exact words, but anything along these lines --  10:29:52

24   memos; you're required to read them; you're required  10:29:57

25   to sign off on them?  Is there anything at all        10:30:00

Ex. 616-24

**MIKE BUMCROT - December 21, 2016**
**O'CONNELL VS. SMITH**

1    describing this responsibility?                          10:30:04

2        A    I -- I don't believe so.  I -- as I recall,    10:30:06

3    the -- these memos would appear on the training         10:30:09

4    board, the bulletin board, and -- and then everyone     10:30:14

5    would be -- would have to read them and initial         10:30:17

6    them, and then the lieutenant would assure that all     10:30:20

7    of that was done.  But there was nothing in writing     10:30:22

8    saying that this is going to happen.                     10:30:25

9            Sometimes we might go weeks without             10:30:29

10   receiving one, and other times we might get ten in a    10:30:32

11   week.                                                    10:30:35

12       Q    And what was done, if anything, to ensure      10:30:39

13   that the members of the homicide bureau -- other        10:30:43

14   than signing off on it, was there any process that      10:30:49

15   tested their knowledge in any respect on these          10:30:55

16   training memos?                                          10:30:58

17       A    No.                                             10:30:59

18       Q    And is it -- and you indicated that            10:31:02

19   lieutenants were -- would check to see that people      10:31:06

20   signed off; is that correct?                            10:31:11

21       A    Yes.                                            10:31:13

22       Q    And if people didn't sign off, were           10:31:14

23   lieutenants supposed to follow up with them to make     10:31:17

24   sure that they reviewed this material?                   10:31:22

25       A    Yes.  I -- I have witnessed lieutenants        10:31:25

**Ex. 616-25**

**MIKE BUMCROT - December 21, 2016**
**O'CONNELL VS. SMITH**

1  dropping the bulletin -- or the training board on a          10:31:29

2  detective's desk and telling them, "Read this and           10:31:33

3  initial it."                                                 10:31:36

4      Q    And what sheriff's department documents, if       10:31:37

5  any, from the 1980s explained that responsibility of       10:31:41

6  lieutenants?                                                 10:31:49

7      A    Not being a lieutenant, I don't know.  But         10:31:53

8  the job specs of a lieutenant are to supervise and          10:31:56

9  make sure that everyone is up to snuff in training.         10:32:00

10 So I would -- I would say that the job specs of a           10:32:02

11 lieutenant would suggest that a lieutenant                   10:32:09

12 supervises people appropriately.                             10:32:11

13     Q    Did you speak -- I think I know the answer         10:32:13

14 to this, but I'll ask it anyway.                             10:32:18

15         Did you speak to any lieutenants or                 10:32:20

16 higher-level people in terms of how this                     10:32:25

17 responsibility was documented or memorialized or            10:32:33

18 required?                                                    10:32:38

19     A    No.                                                 10:32:39

20     Q    So if I'm understanding you correctly, from       10:32:40

21 personal knowledge, you don't know if there were any       10:32:46

22 documents of any kind that assigned this                     10:32:51

23 responsibility to lieutenants or other supervisors.        10:32:54

24         Correct?                                            10:32:56

25     A    That would be fair.                                10:32:57

**Ex. 616-26**

**MIKE BUMCROT - December 21, 2016**
**O'CONNELL VS. SMITH**

1      Q     And aside from personal knowledge, you          10:33:01

2  don't have any basis on which just to provide          10:33:08

3  institutional knowledge, correct, other than your      10:33:11

4  personal experience?                                    10:33:15

5      A     That's true.                                   10:33:15

6      Q     Were -- did you ever receive training in      10:33:26

7  the concept of qualified immunity?                       10:33:29

8      A     I don't recall.  It could have been a          10:33:36

9  training memo from the district attorney's office,      10:33:40

10  but I don't recall that.                                10:33:42

11          MR. GONZALES:  Again, we're talking between    10:33:46

12  the years '80 through '84.  You understood that in     10:33:48

13  that answer?                                            10:33:52

14          THE WITNESS:  Yes.                              10:33:53

15          MR. GONZALES:  Thank you.                       10:33:54

16  BY MR. LITT:                                            10:33:54

17      Q     Have you -- so I want to go back now just    10:33:55

18  to the questions that we covered.                       10:34:03

19          Would your answers be different in any         10:34:05

20  respect on any of the things that we've just           10:34:07

21  discussed about constitutional obligations if we       10:34:10

22  took it up to the present?  That is, is there          10:34:14

23  anything -- would your answer differ in any way if I   10:34:19

24  asked you at any time was there anything more than     10:34:22

25  what you've already described to ensure that police    10:34:26

**Ex. 616-27**

**MIKE BUMCROT - December 21, 2016**
**O'CONNELL VS. SMITH**

1    officers understood and followed their                    10:34:29

2    constitutional obligations?                               10:34:31

3            MR. GONZALES:  I want to make sure you            10:34:32

4    understand that refers to each question that has          10:34:33

5    been posed to you during that time period.  And if        10:34:36

6    you need to have him review those questions, please       10:34:39

7    ask him to do so.  If you have them in mind, then         10:34:42

8    go ahead and answer.                                      10:34:45

9            THE WITNESS:  Well, as the years went on,         10:34:47

10   it became more sophisticated.  There was more             10:34:50

11   training.  There was more -- it was -- there was a        10:34:53

12   homicide school put on by our department and LAPD         10:34:57

13   that everyone was mandated to go to, a two-week           10:35:01

14   homicide school.                                          10:35:06

15           Some of us were sent to an international          10:35:06

16   homicide school put on by the New York State Police       10:35:09

17   that I attended in '96, I believe.  And that --           10:35:12

18           So it became more sophisticated.  There was       10:35:19

19   more training available to us as the years went on.       10:35:22

20   BY MR. LITT:                                              10:35:28

21      Q    So you mentioned that at some point there         10:35:29

22   became a mandated two-week homicide school; correct?      10:35:34

23      A    Yes.                                              10:35:38

24      Q    When was that?                                    10:35:38

25      A    I would say in the early to mid '90s.             10:35:39

**Ex. 616-28**

**MIKE BUMCROT - December 21, 2016**
**O'CONNELL VS. SMITH**

| | | |
|---|---|---|
| 1 | Q    And that was put on by the sheriff's | 10:35:47 |
| 2 | department? | 10:35:50 |
| 3 | A    The sheriff's and LAPD -- they both put it | 10:35:50 |
| 4 | on. | 10:35:55 |
| 5 | Q    And did that have materials on | 10:35:55 |
| 6 | constitutional obligations of police investigators? | 10:35:59 |
| 7 | A    There were district attorneys who taught | 10:36:04 |
| 8 | classes.  So I never sat through the -- I taught a | 10:36:08 |
| 9 | couple of classes, but I never sat through the | 10:36:13 |
| 10 | two weeks; so I don't know for certain.  But there | 10:36:15 |
| 11 | were district attorneys who did provide classes on | 10:36:20 |
| 12 | certain subjects. | 10:36:23 |
| 13 | Q    And you don't know what those subjects -- | 10:36:24 |
| 14 | currently you don't know what those subjects are? | 10:36:28 |
| 15 | A    I don't. | 10:36:30 |
| 16 | Q    And in terms of the concept of qualified | 10:36:35 |
| 17 | immunity, do you know whether or not those classes | 10:36:40 |
| 18 | addressed the concept of qualified immunity? | 10:36:45 |
| 19 | A    I don't know. | 10:36:48 |
| 20 | Q    So now going back to the early 1980s. | 10:36:56 |
| 21 | Other than what you've already described, | 10:37:02 |
| 22 | are you aware of anything else to ensure that police | 10:37:07 |
| 23 | officers were aware of their constitutional | 10:37:12 |
| 24 | obligations? | 10:37:14 |
| 25 | A    Only to what I've testified to already. | 10:37:16 |

**Ex. 616-29**

**MIKE BUMCROT - December 21, 2016**
**O'CONNELL VS. SMITH**

1    believe photo lineup procedures were discussed.                10:41:18

2    Q    Okay.  And when you say "discussed," I want           10:41:23

3    you to --                                                       10:41:27

4         Well, first, so we've identified so far              10:41:30

5    three areas of consti- -- what I'll call                       10:41:34

6    constitutional responsibility of police officers:             10:41:39

7    search and seizure, Brady, and eyewitness                      10:41:41

8    identification.                                                10:41:44

9         Do you recall any others that you received           10:41:45

10   any formal training in between 1980 and 1985?                  10:41:48

11   A    No.                                                       10:41:55

12   Q    And you mentioned that the homicide school,              10:41:58

13   not everybody attended.                                        10:42:08

14        How was it determined who attended the               10:42:10

15   homicide school?                                               10:42:13

16   A    You know, I'm not certain how that was                10:42:14

17   decided.  Some -- sometimes they would go a long             10:42:16

18   period of time and send no one, and then all of a            10:42:18

19   sudden they would send several people at a time.             10:42:21

20        And when they sent me, I had already been           10:42:24

21   assigned to homicide for a couple of years.                   10:42:27

22   Q    And during the period of 1980 to 1985, can            10:42:38

23   you estimate the total number of individuals who             10:42:44

24   would have served in the homicide bureau during some         10:42:47

25   portion of that time?                                         10:42:53

**MIKE BUMCROT - December 21, 2016**
**O'CONNELL VS. SMITH**

| | | |
|---|---|---|
| 1 | A    Correct.  They were not supervisors. | 10:45:45 |
| 2 | Q    So each team had one supervisor, which was | 10:45:47 |
| 3 | a lieutenant, and then the whole bureau had a | 10:45:51 |
| 4 | captain? | 10:45:53 |
| 5 | A    Correct. | 10:45:55 |
| 6 | Q    Now, how many -- well, the year you got | 10:46:04 |
| 7 | sent -- you went to homicide in 1980; right? | 10:46:13 |
| 8 | A    Officially, yes. | 10:46:18 |
| 9 | Q    And if I understood you correctly, you got | 10:46:19 |
| 10 | sent to homicide school in 1982? | 10:46:22 |
| 11 | A    The end of '81 or '82, yes. | 10:46:26 |
| 12 | Q    And how many other people attended from the | 10:46:31 |
| 13 | homicide bureau that detective school along with | 10:46:34 |
| 14 | you? | 10:46:37 |
| 15 | A    Just myself. | 10:46:38 |
| 16 | Q    Was the fact that you attended homicide | 10:46:52 |
| 17 | school noted in your personnel file?  Would it be | 10:46:56 |
| 18 | noted in your personnel file? | 10:47:01 |
| 19 | A    You know, I'm not sure.  I would think it | 10:47:02 |
| 20 | would be. | 10:47:06 |
| 21 | Q    All right.  Let's take the year 1982. | 10:47:12 |
| 22 | Are you able to estimate the number of | 10:47:16 |
| 23 | people in the year 1982 who attended the homicide | 10:47:18 |
| 24 | school that you've described? | 10:47:24 |
| 25 | A    No.  I -- no one was ever aware of when the | 10:47:26 |

**Ex. 616-35**

**MIKE BUMCROT - December 21, 2016**
**O'CONNELL VS. SMITH**

1    school was coming up.  It would all of a sudden be,    10:47:32

2    "Hey, you want to go to homicide school next week?"    10:47:35

3    And if you couldn't, someone else would go, you    10:47:38

4    know.  So I don't -- I don't know how many went.    10:47:41

5        Q    So if I understand you correctly, a person    10:47:44

6    could serve for an extended period of time without    10:47:46

7    attending -- a person who's a member of the homicide    10:47:51

8    bureau without attending the homicide school.    10:47:55

9    Correct?    10:47:57

10       A    The --    10:47:57

11           MR. GONZALES:  Vague as to "extended period    10:47:59

12   of time."    10:48:02

13           You may answer if you --    10:48:02

14           THE WITNESS:  The DOJ school, yes.    10:48:02

15   Everyone who had not attended were mandated to    10:48:04

16   attend the homicide school put on by us and LAPD    10:48:09

17   once that school started.    10:48:13

18   BY MR. LITT:    10:48:14

19       Q    Right.  But that was in the '90s?    10:48:15

20       A    Yes.  1990, I believe.    10:48:18

21       Q    And if I'm understanding you correctly,    10:48:26

22   you're not able to provide any reliable estimate of    10:48:28

23   the percentage of members of the homicide bureau who    10:48:35

24   attended homicide school from 1980 to 1985.    10:48:39

25   Correct?    10:48:44

Ex. 616-36

**MIKE BUMCROT - December 21, 2016**
**O'CONNELL VS. SMITH**

| | | | |
|---|---|---|---|
| 1 | A | Correct. | 10:48:44 |
| 2 | Q | And the training materials that were used | 10:49:01 |
| 3 | | in the DOJ school, when you attended, can you | 10:49:05 |
| 4 | | describe what those materials -- what their source | 10:49:13 |
| 5 | | was?  In other words, were they POST?  Were they | 10:49:18 |
| 6 | | DOJ?  Were they the sheriff's department?  What -- | 10:49:20 |
| 7 | | as best you can recall. | 10:49:23 |
| 8 | A | To the best I recall, it wasn't the | 10:49:24 |
| 9 | | sheriff's department because it was several | 10:49:26 |
| 10 | | statewide agencies involved.  So I believe that it | 10:49:29 |
| 11 | | was a combination of POST and DOJ. | 10:49:35 |
| 12 | Q | Are you aware of any POST materials that | 10:49:53 |
| 13 | | address Brady obligations? | 10:49:59 |
| 14 | A | I'm not aware of any, no. | 10:50:02 |
| 15 | Q | Are you aware of any -- and this is at any | 10:50:06 |
| 16 | | time. | 10:50:09 |
| 17 | | So when you say you're not aware of any, to | 10:50:09 |
| 18 | | your knowledge, from the time you started in the | 10:50:11 |
| 19 | | sheriff's department to the present, you're not | 10:50:16 |
| 20 | | aware of any POST materials that address Brady | 10:50:19 |
| 21 | | obligations? | 10:50:23 |
| 22 | A | Well, I can just say that I have never seen | 10:50:24 |
| 23 | | them. | 10:50:26 |
| 24 | Q | Now, you mentioned that there were | 10:50:52 |
| 25 | | periodically circulated bulletins or memos that | 10:50:54 |

**LUDWIG KLEIN REPORTERS & VIDEO, INC. - 800.540.0681**          37

**Ex. 616-37**

**MIKE BUMCROT - December 21, 2016**
**O'CONNELL VS. SMITH**

1    people were supposed to read; is that right?        10:51:01

2        A    Yes.        10:51:04

3        Q    Is there any sheriff's department document        10:51:09

4    that you're aware of that set out the procedure for        10:51:13

5    the distribution of such materials?        10:51:19

6        A    Not that I'm aware of.        10:51:25

7        Q    Is there any sheriff's department document        10:51:27

8    that you're aware of that described what topics were        10:51:29

9    to be covered by such materials?        10:51:41

10        A    No.        10:51:45

11        Q    Is there any sheriff's department document        10:51:46

12    that you're aware of that described how it was to be        10:51:48

13    ensured that those materials were reviewed?        10:52:00

14        A    No.        10:52:03

15        Q    So if I understand you correctly, to the        10:52:10

16    extent that this occurred, this was all an informal        10:52:13

17    process?        10:52:16

18        A    I believe that's what I referred to it as,        10:52:17

19    informal training.        10:52:24

20        Q    All right.  For the period 1980 to 1985,        10:52:38

21    are you able to identify for me any specific -- I        10:52:45

22    know that you've described that you recall certain        10:52:52

23    things, but -- so my question here is a little        10:52:55

24    different from that.        10:52:59

25        Are you able to identify any specific        10:53:00

**Ex. 616-38**

**MIKE BUMCROT - December 21, 2016**
**O'CONNELL VS. SMITH**

1    plagiarized from an earlier edition, I think,                    10:57:49

2    written in the '70s, I believe.                                  10:57:53

3            Most of this is taken right out of the --               10:57:57

4    with the exception of on page 3, the                             10:58:01

5    responsibilities of internal affairs and use of                 10:58:07

6    force in crowd and riot control -- that might be                10:58:09

7    from a departmental manual, but most of this is not             10:58:12

8    in the homicide manual, on page 3.                               10:58:15

9        Q    Okay.  So most of this -- most of the                  10:58:24

10   documents listed on Exhibit 425 are from some                   10:58:27

11   version of the homicide manual?                                 10:58:32

12       A    Yes.                                                    10:58:34

13       Q    Are you able to identify any documents not             10:58:34

14   listed there that would have addressed any of the               10:58:42

15   issues that I described earlier?  I can repeat them             10:58:45

16   in you want me to.                                              10:58:48

17       A    No.  I know of no other writings that were             10:58:49

18   provided to discuss what you are asking.                        10:58:57

19       Q    All right.  So let's turn to Brady.                    10:59:13

20            By "Brady," you're referring to the case               10:59:17

21   titled "Brady versus Maryland"; is that right?                  10:59:19

22       A    Yes.                                                    10:59:22

23       Q    Now, you described that -- well, let me --            10:59:22

24   let me make sure I understand.                                  10:59:41

25            Are you able to identify any specific                  10:59:42

**Ex. 616-41**

**MIKE BUMCROT - December 21, 2016**
**O'CONNELL VS. SMITH**

1   document that you ever received in the period 1980                10:59:46

2   to 1985 that defined the Brady obligations of a law              10:59:49

3   enforcement officer?                                              10:59:59

4        A    I can't specifically remember every piece              10:59:59

5   of paper I ever read between 1980 and 1985, but it               11:00:03

6   was part of your on-the-job training with your                   11:00:07

7   training officer, who would discuss things like                  11:00:09

8   this, as well as your experience as you were filing              11:00:12

9   cases with the district attorney.                                11:00:16

10       Q    Okay.  Is there any document that defined              11:00:18

11  the training responsibilities of a training officer             11:00:22

12  in the homicide bureau or in the detective division?            11:00:25

13       A    No.                                                     11:00:29

14       Q    So am I correct that whether or not a                  11:00:31

15  person got trained on Brady depended on whether or              11:00:38

16  not that person's training officer did that on his             11:00:43

17  own -- his or her own initiative?                                11:00:51

18       A    That would -- that would be a true                     11:00:55

19  statement, yes.                                                  11:00:58

20       Q    Okay.  And am I correct that there was no             11:01:09

21  departmental policy or document guideline of any               11:01:13

22  kind that required Brady training?                               11:01:21

23       A    Not that I'm aware of.                                 11:01:26

24       Q    Is there any document of any kind                      11:02:00

25  promulgated by the sheriff's department that                    11:02:07

**MIKE BUMCROT - December 21, 2016**
**O'CONNELL VS. SMITH**

| | | |
|---|---|---|
| 1 | guaranteed that Brady training was provided? | 11:02:10 |
| 2 | A     Not that I'm aware of. | 11:02:14 |
| 3 | Q     To this day -- so, now, those questions | 11:02:23 |
| 4 | were for the period 1980 to 1985. | 11:02:26 |
| 5 | Do your answers change in any respects if | 11:02:31 |
| 6 | we go up to the current day? | 11:02:34 |
| 7 | A     Well, only in that today's homicide | 11:02:35 |
| 8 | detectives you hear -- as you walk through the squad | 11:02:43 |
| 9 | bay with over 100 homicide detectives, you hear them | 11:02:45 |
| 10 | discussing Brady at length.  So when they -- there | 11:02:50 |
| 11 | is more of, again, informal training, that I'm aware | 11:02:53 |
| 12 | of, that they discuss it a lot. | 11:02:55 |
| 13 | As far as any training -- official training | 11:02:58 |
| 14 | from the DA's office, I'm not aware of it. | 11:03:04 |
| 15 | Q     And you're not aware of any official | 11:03:06 |
| 16 | requirements by the sheriff's department for Brady | 11:03:10 |
| 17 | training even today? | 11:03:13 |
| 18 | A     I'm not aware of it. | 11:03:22 |
| 19 | Q     Was there any requirement that a supervisor | 11:03:42 |
| 20 | be consulted regarding whether or not something | 11:03:53 |
| 21 | qualified as Brady material? | 11:03:58 |
| 22 | A     Not that I'm aware of. | 11:04:02 |
| 23 | Q     So we've been using the phrase "Brady | 11:04:06 |
| 24 | material."  So let's take a minute to define what | 11:04:10 |
| 25 | that means. | 11:04:15 |

**Ex. 616-43**

**MIKE BUMCROT - December 21, 2016**
**O'CONNELL VS. SMITH**

```
 1      A     Yes, that's my understanding.              11:05:37

 2      Q     And does the phrase "exculpatory material"  11:05:38

 3   mean anything to you?                                11:05:47

 4      A     That's everything involved in the case,    11:05:48

 5   anything that's exculpatory, yes.                    11:05:51

 6      Q     Well, there are things that are            11:05:55

 7   incriminatory that's also involved in the case;     11:05:59

 8   right?                                               11:05:59

 9      A     That, of course, is going to be involved in 11:05:59

10   the material being turned over, but you must turn    11:06:03

11   over the exculpatory information also.               11:06:05

12      Q     And what constitutes exculpatory           11:06:08

13   information, as you understand it?                   11:06:13

14      A     As I understand it, it's the good and the  11:06:15

15   bad.  If it's something that says this guy might not 11:06:17

16   have done it, you've got to turn that information    11:06:21

17   over.  Or there might be another suspect.            11:06:23

18      Q     So it's your current understanding that, if 11:06:33

19   there's an alternative -- if there's information     11:06:45

20   indicating the possibility of an alternative         11:06:46

21   suspect, that qualifies as Brady information that    11:06:49

22   has to be turned over?                               11:06:51

23      A     Yes.                                        11:06:53

24      Q     And is it your understanding that that's an 11:06:57

25   affirmative obligation of the police department or   11:06:58
```

**Ex. 616-45**

**MIKE BUMCROT - December 21, 2016**
**O'CONNELL VS. SMITH**

| 1 | the law enforcement agency? | 11:07:02 |
| 2 | A    Yes. | 11:07:04 |
| 3 | Q    Do you have any understanding as to whether | 11:07:09 |
| 4 | or not Brady -- and these questions are, basically, | 11:07:12 |
| 5 | for any time, and then we'll go back to the early | 11:07:17 |
| 6 | '80s -- Brady addresses information that may impeach | 11:07:21 |
| 7 | or undermine the credibility of a witness? | 11:07:30 |
| 8 | A    Was that a question? | 11:07:38 |
| 9 | Q    Yeah.  I'll rephrase it. | 11:07:39 |
| 10 | A    Okay. | 11:07:40 |
| 11 | Q    I thought it was a question. | 11:07:41 |
| 12 | A    I thought it was a statement. | 11:07:42 |
| 13 | MR. GONZALES:  I was waiting for an "is | 11:07:43 |
| 14 | that correct?" | 11:07:45 |
| 15 | THE WITNESS:  Yeah, that's what I was | 11:07:46 |
| 16 | waiting for. | 11:07:46 |
| 17 | BY MR. LITT: | 11:07:46 |
| 18 | Q    Do you know -- the question was:  Do you | 11:07:47 |
| 19 | have any understanding on whether or not Brady | 11:07:48 |
| 20 | addresses information that may tend to impeach or | 11:07:53 |
| 21 | undermine the credibility of a witness? | 11:07:58 |
| 22 | A    Yes. | 11:08:00 |
| 23 | Q    What's your understanding? | 11:08:00 |
| 24 | A    Well, I can't get more succinct than you | 11:08:01 |
| 25 | must turn over everything, the good and the bad. | 11:08:06 |

**Ex. 616-46**

**MIKE BUMCROT - December 21, 2016**
**O'CONNELL VS. SMITH**

```
 1     A     Sometimes.                                    11:39:01

 2     Q     Now, what's the function of the               11:39:02

 3  police report as opposed to the notes?                 11:39:10

 4     A     Well, your notes will tell the reader         11:39:13

 5  everything that you've done.  The police report are    11:39:20

 6  the nuts and bolts of the investigation.  So if I go   11:39:25

 7  across the street and interview 47 people who don't    11:39:28

 8  see anything, I'm not going to say that in my          11:39:32

 9  report, but I'll have it in my notes.                  11:39:33

10     Q     Okay.  The report should include anything     11:39:37

11  of significance to the investigation; correct?         11:39:43

12     A     That's true.                                  11:39:45

13     Q     And by "reports," I mean the formal written   11:39:48

14  report; right?  You understood that?                   11:39:51

15     A     I understand that.                            11:39:52

16     Q     And anything -- that term "anything" -- and   11:39:54

17  it should be objective; correct?                       11:40:02

18     A     Yes.  Fair and impartial.                     11:40:04

19     Q     And it should reflect not only the strong     11:40:06

20  points of your case, but the weak points of your       11:40:13

21  case or potentially weak points of your case;          11:40:16

22  correct?                                               11:40:19

23     A     It should reflect everything in the case.     11:40:19

24     Q     And isn't it true that anything that is       11:40:25

25  potentially favorable to the defendant is of           11:40:29
```

**Ex. 616-60**

**MIKE BUMCROT - December 21, 2016**
**O'CONNELL VS. SMITH**

1    significance to the investigation?                         11:40:33

2         A    Of course.                                        11:40:36

3         Q    And, therefore, isn't it true that anything      11:40:37

4    that is potentially favorable to the defendant             11:40:40

5    should be in a police report?                              11:40:43

6         A    It should at least be written down.              11:40:46

7         Q    And I don't -- I move to strike.                 11:40:49

8              My question is not whether it should be in        11:40:50

9    the notes.   I'm asking you about the report here and      11:40:52

10   only the report.                                           11:40:55

11             Isn't it true that anything that is              11:40:56

12   potentially favorable to the defendant should be           11:40:59

13   reflected in the written police report?                    11:41:02

14             MR. GONZALES:   It's speculative as to what      11:41:04

15   is "potentially favorable."                                11:41:07

16             Go ahead and answer.                             11:41:10

17             THE WITNESS:   Anything that is potentially      11:41:10

18   favorable will at least be -- should at least be           11:41:14

19   given to the district -- district attorney and             11:41:14

20   probably written in the report.                            11:41:17

21   BY MR. LITT:                                                11:41:22

22        Q    And when you say "probably be written in         11:41:22

23   the report," it should probably be written in the          11:41:24

24   report because, otherwise, it wouldn't be a complete       11:41:28

25   recitation of all the information that's significant       11:41:31

**Ex. 616-61**

MIKE BUMCROT - December 21, 2016
O'CONNELL VS. SMITH

1    to the investigation; right?                          11:41:34

2        A    That's probably a true statement.            11:41:38

3        Q    And I assume that you've had extensive        11:41:42

4    experience in presenting cases to the district        11:41:49

5    attorney?  Yes?                                        11:41:59

6        A    Yes.                                          11:41:59

7        Q    And we discussed before that the notes can   11:42:06

8    be hundreds of pages long; right?  And potentially    11:42:09

9    favorable information in the notes can be buried in   11:42:15

10   pages and not be readily apparent; right?             11:42:20

11       A    I don't know about that.                     11:42:24

12       Q    Well, let's go back to what we were talking  11:42:28

13   about, where the ex-wife -- remember that example     11:42:30

14   that I gave you, the ex-wife says that there was a    11:42:36

15   prior attempt on the victim's life?  Do you recall    11:42:42

16   that?                                                 11:42:44

17       A    Yes.                                          11:42:45

18       Q    So writing that up -- let's suppose writing  11:42:45

19   that up takes a page or two, and it's part of an      11:42:51

20   interview with the ex-wife that runs on for several   11:43:00

21   pages, not just a page or two, and it's part of a     11:43:03

22   notebook that has interviews with ten other           11:43:06

23   witnesses.                                            11:43:09

24           So that information is not readily apparent   11:43:12

25   unless you carefully scrutinize each word in the      11:43:18

Ex. 616-62

**MIKE BUMCROT - December 21, 2016**
**O'CONNELL VS. SMITH**

| | | |
|---|---|---|
| 1 | the years.  So I probably worked with maybe 30 | 11:46:48 |
| 2 | detectives over the years. | 11:46:53 |
| 3 |     Q    Okay.  I think I missed the math somewhere, | 11:46:56 |
| 4 | but -- | 11:47:00 |
| 5 |         So you had 20 in narcotics, and I thought | 11:47:00 |
| 6 | you said 20 in homicide? | 11:47:02 |
| 7 |     A    I trained 20, and then probably a total of | 11:47:04 |
| 8 | 30 partners, including my 20 training partners. | 11:47:06 |
| 9 |     Q    Oh, I see. | 11:47:10 |
| 10 |     A    Probably 50 detectives I worked with. | 11:47:11 |
| 11 |     Q    Okay.  All right.  Let's go back to | 11:47:15 |
| 12 | information that qualifies as Brady, as you | 11:47:23 |
| 13 | understand it. | 11:47:25 |
| 14 |         And, again, I want to confirm:  Your | 11:47:26 |
| 15 | understanding today is the same as it was in the | 11:47:27 |
| 16 | early '80s; right? | 11:47:30 |
| 17 |     A    Yes. | 11:47:32 |
| 18 |     Q    Information that contradicts the | 11:47:34 |
| 19 | prosecution's theory of guilt, is that -- or the | 11:47:37 |
| 20 | detective's theory of guilt, does that qualify as | 11:47:44 |
| 21 | Brady information? | 11:47:48 |
| 22 |     A    Yes. | 11:47:49 |
| 23 |     Q    The failure of an eyewitness to make a | 11:48:01 |
| 24 | positive identification, is that Brady information? | 11:48:04 |
| 25 |     A    Yes. | 11:48:10 |

**Ex. 616-66**

**MIKE BUMCROT - December 21, 2016**
**O'CONNELL VS. SMITH**

1   leave that door open.                                    12:15:29

2       Q    Okay.  And it would leave the door open         12:15:30

3   because he could have been involved in the process       12:15:37

4   of hiring a murderer; right?  That's why it would        12:15:41

5   leave the door open?                                     12:15:45

6       A    Well, it's unknown who.                         12:15:46

7       Q    Right.  But it doesn't exclude him as one       12:15:48

8   possibility?                                             12:15:52

9       A    True.                                           12:15:52

10      Q    Okay.  Now, with this kind of background in     12:15:56

11  mind, I'm going to add to this.                          12:16:01

12          If the police received an anonymous tip --       12:16:06

13  and I'm going to give you certain pieces of              12:16:11

14  information regarding the anonymous tip.                 12:16:15

15          Well, first, can an anonymous tip, in your       12:16:18

16  view, qualify as Brady information?                      12:16:23

17      A    Yes.                                            12:16:30

18      Q    All right.  If the police receive an           12:16:33

19  anonymous tip and it has the following in it:  One,      12:16:35

20  the tip indicates that the caller, whoever it is, is     12:16:43

21  aware of the custody dispute between Jay French and      12:16:49

22  his ex-wife Jeanne, would that indicate to you that      12:16:56

23  whoever this caller is appears to have some personal     12:17:04

24  knowledge of at least the personalities involved?       12:17:07

25          MR. GONZALES:  Incomplete hypothetical.          12:17:10

**Ex. 616-80**

**MIKE BUMCROT - December 21, 2016**
**O'CONNELL VS. SMITH**

| | | |
|---|---|---|
| 1 | Speculative. | 12:17:12 |
| 2 | Go ahead. | 12:17:12 |
| 3 | THE WITNESS:  Well, it would at least tell | 12:17:13 |
| 4 | me that the person is aware of the situation. | 12:17:14 |
| 5 | BY MR. LITT: | 12:17:18 |
| 6 | Q    All right.  And if in the anonymous tip the | 12:17:19 |
| 7 | caller indicates that the ex-wife hired a hit man | 12:17:23 |
| 8 | for several thousand dollars, the hit man was hired | 12:17:29 |
| 9 | through a male in Oregon, Randy Smith -- you'll | 12:17:33 |
| 10 | remember he was the person supposedly involved in | 12:17:41 |
| 11 | trying to run down Jay French -- was living in | 12:17:44 |
| 12 | Oregon, the police didn't -- it wasn't in the | 12:17:48 |
| 13 | anonymous tip, but the police knew that, okay, | 12:17:55 |
| 14 | separately, does that information qualify as Brady | 12:17:57 |
| 15 | information, in your training and experience? | 12:18:04 |
| 16 | MR. GONZALES:  Incomplete hypothetical. | 12:18:06 |
| 17 | Speculative.  And somewhat vague. | 12:18:08 |
| 18 | Go ahead if you can. | 12:18:11 |
| 19 | THE WITNESS:  Well, all I can say is that | 12:18:12 |
| 20 | that information should be in at least your | 12:18:15 |
| 21 | notebook. | 12:18:18 |
| 22 | BY MR. LITT: | 12:18:19 |
| 23 | Q    Well, that information -- you would agree | 12:18:20 |
| 24 | with me that that information indicates that this | 12:18:29 |
| 25 | was a murder for hire, right, if it's true? | 12:18:32 |

**Ex. 616-81**

**MIKE BUMCROT - December 21, 2016**
**O'CONNELL VS. SMITH**

1    Obviously, you don't know whether it's true.  But if    12:18:35

2    it's true, it's a murder for hire; right?    12:18:37

3        A    It's -- that's a big if --    12:18:39

4        Q    I understand --    12:18:41

5        A    -- that it could be a murder for hire.    12:18:42

6        Q    And if it's a murder for hire, then that    12:18:44

7    would point to an alternative suspect if the theory    12:18:50

8    of -- against the defendant was that the defendant    12:18:58

9    had a personal relationship with the ex-wife Jeanne,    12:19:02

10   and that was his motive; right?    12:19:05

11       A    Well, what it means is that you would look    12:19:08

12   at that clue because you don't know who this caller    12:19:13

13   is.  It's an anonymous caller.  It could be the    12:19:17

14   actual killer, who's trying to get you off of his or    12:19:20

15   her back and on to the family.  So you just have to    12:19:24

16   investigate the clue.    12:19:28

17       Q    Right.  I understand that.    12:19:30

18            The -- but all I'm saying is:  It's a clue,    12:19:35

19   and you don't know whether it's true or not,    12:19:41

20   right --    12:19:44

21       A    That's true.    12:19:44

22       Q    -- one way or the other?    12:19:45

23       A    That's true.    12:19:47

24       Q    So for Brady purposes, that's something you    12:19:48

25   would want to investigate; right?  I'm sorry.  Not    12:19:53

**Ex. 616-82**

**MIKE BUMCROT - December 21, 2016**
**O'CONNELL VS. SMITH**

| | | |
|---|---|---|
| 1 | for Brady purposes. | 12:19:57 |
| 2 | As an investigator, that's something you | 12:19:58 |
| 3 | would want to investigate; right? | 12:20:02 |
| 4 | A    Of course. | 12:20:03 |
| 5 | Q    And for Brady purposes, that's also | 12:20:04 |
| 6 | something that the defense would want to | 12:20:07 |
| 7 | investigate; right? | 12:20:09 |
| 8 | MR. GONZALES:  Speculation. | 12:20:09 |
| 9 | THE WITNESS:  Yeah. | 12:20:10 |
| 10 | MR. GONZALES:  Go ahead. | 12:20:12 |
| 11 | THE WITNESS:  I can only speculate that the | 12:20:13 |
| 12 | defense attorney would want that information. | 12:20:15 |
| 13 | BY MR. LITT: | 12:20:16 |
| 14 | Q    Well, based on your training and | 12:20:17 |
| 15 | understanding of Brady, wouldn't that information be | 12:20:21 |
| 16 | the kind of information that is potentially | 12:20:27 |
| 17 | favorable to the defendant? | 12:20:32 |
| 18 | A    Yes. | 12:20:35 |
| 19 | Q    And, therefore, it qualified as Brady | 12:20:35 |
| 20 | information; right? | 12:20:40 |
| 21 | MR. GONZALES:  Incomplete hypothetical. | 12:20:40 |
| 22 | Go ahead. | 12:20:41 |
| 23 | THE WITNESS:  I would say probably. | 12:20:42 |
| 24 | BY MR. LITT: | 12:20:45 |
| 25 | Q    And to investigate that, given the fact | 12:20:53 |

**Ex. 616-83**

**MIKE BUMCROT - December 21, 2016**
**O'CONNELL VS. SMITH**

| | | |
|---|---|---|
| 1 | And I can't sit here and tell you we | 12:26:09 |
| 2 | discussed Brady one day and another case on another | 12:26:11 |
| 3 | day, but we discussed whatever the flavor of the day | 12:26:14 |
| 4 | was. | 12:26:18 |
| 5 | Q    So my question is a little different. | 12:26:18 |
| 6 | Is -- was there any established procedure | 12:26:20 |
| 7 | where, if an officer wasn't sure that this was Brady | 12:26:24 |
| 8 | information, that something -- some piece of | 12:26:35 |
| 9 | information was Brady information, there was | 12:26:40 |
| 10 | somebody that they should consult on that issue? | 12:26:43 |
| 11 | A    Only informally, where you would go to | 12:26:46 |
| 12 | someone who had more experience and discussed cases | 12:26:50 |
| 13 | with him. | 12:26:56 |
| 14 | Q    And that informal process would depend on | 12:26:57 |
| 15 | the initiative of the investigating officer; right? | 12:27:01 |
| 16 | A    True. | 12:27:05 |
| 17 | Q    And it would depend on whether or not that | 12:27:08 |
| 18 | investigating officer had any understanding of Brady | 12:27:12 |
| 19 | sufficient to let the officer know that this was | 12:27:17 |
| 20 | something he should ask about; right? | 12:27:24 |
| 21 | A    Yes. | 12:27:28 |
| 22 | Q    And there was no formal process that | 12:27:29 |
| 23 | ensured that every investigator had that | 12:27:34 |
| 24 | understanding; correct? | 12:27:36 |
| 25 | A    Correct. | 12:27:38 |

**Ex. 616-87**

**MIKE BUMCROT - December 21, 2016**
**O'CONNELL VS. SMITH**

```
 1     A     I believe so.                               12:30:30

 2     Q     Now, we've established that the murder book  12:30:34

 3   did not include the handwritten notebooks by the --  12:30:37

 4   of the detectives; correct?                          12:30:44

 5     A     Correct.                                     12:30:45

 6     Q     Was there any established procedure in the   12:30:45

 7   manual similar to the murder book that required that 12:30:50

 8   the notebooks be turned over to the district         12:30:55

 9   attorney?                                            12:30:58

10     A     I don't believe so.  Just experience and     12:30:58

11   filing cases.                                        12:31:03

12     Q     And I've heard the term "poor boy" used.     12:31:07

13           Have you heard that term?                    12:31:10

14     A     Yes.                                         12:31:11

15     Q     What does it mean?                           12:31:11

16     A     That's the case file.                        12:31:12

17     Q     So the poor boy includes the -- the          12:31:14

18   notebooks, the detectives' notebooks; right?         12:31:20

19     A     Yes.                                         12:31:23

20     Q     And it includes the murder book; right?      12:31:26

21     A     Yes.                                         12:31:27

22     Q     Is there anything else that it includes?     12:31:28

23     A     Yes.  Several things.                        12:31:30

24     Q     What are those?                              12:31:31

25     A     Crime scene photographs, coroner's           12:31:32
```

**Ex. 616-90**

**MIKE BUMCROT - December 21, 2016**
**O'CONNELL VS. SMITH**

| | | |
|---|---|---|
| 1 | photographs, all information regarding witnesses and | 12:31:37 |
| 2 | suspects and family members, telephone calls that | 12:31:41 |
| 3 | you receive on the case, any wanted fliers that you | 12:31:47 |
| 4 | might put out on the case. | 12:31:54 |
| 5 | So everything involved in the case goes in | 12:31:55 |
| 6 | the poor boy. | 12:31:58 |
| 7 | Q    And currently is there any formal policy | 12:32:04 |
| 8 | that requires that the poor boy -- the whole | 12:32:11 |
| 9 | poor boy be provided to the district attorney? | 12:32:17 |
| 10 | A    The whole poor boy, no. | 12:32:19 |
| 11 | Q    Is there any -- currently or at any time | 12:32:24 |
| 12 | that -- since 1980, has there ever been any formal | 12:32:28 |
| 13 | policy that required that the detectives' notebooks | 12:32:35 |
| 14 | be turned over to the district attorney? | 12:32:38 |
| 15 | A    No formal policy. | 12:32:41 |
| 16 | Q    Was there any formal training or policy | 12:33:09 |
| 17 | regarding the detectives' notebooks and how to write | 12:33:17 |
| 18 | down what went in them, maintain them, anything like | 12:33:21 |
| 19 | that? | 12:33:26 |
| 20 | A    No. | 12:33:26 |
| 21 | Q    So going back to police reports. | 12:33:56 |
| 22 | I'm going to show you a document that we've | 12:34:24 |
| 23 | marked as Exhibit 401. | 12:34:27 |
| 24 | Can you tell me what this document is?  Are | 12:34:48 |
| 25 | you able to identify it? | 12:34:51 |

**MIKE BUMCROT - December 21, 2016**
**O'CONNELL VS. SMITH**

```
 1    Q    Well, take a look at page 7.              12:37:09

 2         You see at the top it refers to note       12:37:31

 3  taking?                                           12:37:33

 4    A    Yes.                                       12:37:34

 5    Q    And this -- this -- as you understand it,  12:37:40

 6  at least, does this refer to field notes or the   12:37:47

 7  contemporaneous notes taken in the course of the  12:37:50

 8  investigation?                                    12:37:52

 9    A    It just says "note taking."  I don't know  12:37:56

10  anything about what type of note taking.          12:38:05

11    Q    All right.  So you're -- you're not really 12:38:07

12  familiar with this document one way or the other, I 12:38:10

13  take it?                                          12:38:12

14    A    I'm definitely not familiar with it.      12:38:13

15    Q    Okay.  Then we won't use it.  So I'll ask  12:38:16

16  you this way.                                     12:38:26

17         Was there any formal training in the early 12:38:27

18  1980s on the attributes of a good police report?  12:38:29

19    A    No formal training that I recall.  Just    12:38:36

20  experience.                                       12:38:40

21    Q    Would you agree that a police report -- and 12:38:48

22  by "police report," I mean a written-out report as 12:39:00

23  opposed to the contemporaneous notes.             12:39:05

24         You understand that; right?               12:39:06

25    A    Yes.                                       12:39:07
```

**MIKE BUMCROT - December 21, 2016**
**O'CONNELL VS. SMITH**

1    that to the report.                                          12:40:50

2            So are you saying that the report did not            12:40:51

3    need to provide information that might undermine the          12:40:53

4    theory of guilt?                                             12:41:00

5       A    No.  Of course I'm not saying that.  What           12:41:03

6    I'm saying is that the report should be complete as          12:41:06

7    to the writing officer's investigation and it should         12:41:13

8    be fair and impartial.                                       12:41:18

9       Q    I understand all of those things, but I'm           12:41:24

10   asking you a slightly different question.                    12:41:27

11           As you understand it, did the report -- I'm         12:41:30

12   not talking about the notes.  I'm talking about the          12:41:35

13   report.                                                      12:41:37

14           Was the report supposed to include not only         12:41:41

15   information that supported the theory of guilt of a          12:41:46

16   defendant, but also any information that might               12:41:52

17   undermine or contradict that theory of guilt?  I'm          12:41:56

18   limiting myself for this question to the report             12:42:01

19   only.                                                        12:42:04

20      A    Well, I thought I had answered that              12:42:06

21   several times, but I guess the short answer would be         12:42:09

22   yes.                                                         12:42:13

23      Q    Have you ever heard the term "rule of             12:42:38

24   discovery"?                                                  12:42:41

25      A    Yes.                                                 12:42:42

**Ex. 616-95**

**MIKE BUMCROT - December 21, 2016**
**O'CONNELL VS. SMITH**

1      Q      What does that refer to?                          12:42:42

2      A      That everything must be turned over to the       12:42:45

3   defense.   Everything involved in your investigation       12:42:47

4   should be turned over.                                     12:42:51

5      Q      Is there any formal policy of which you're       12:42:54

6   aware of -- policy, documents of any kind at any           12:42:58

7   time -- from the sheriff's department that addresses       12:43:04

8   that?                                                      12:43:07

9      A      I don't recall ever reviewing any written        12:43:11

10  policy that -- but all experienced detectives              12:43:14

11  understand you comply with discovery.                      12:43:23

12     Q      Well, is there any -- when you say "comply        12:43:30

13  with discovery," you mean where there's a discovery        12:43:34

14  order?                                                     12:43:35

15     A      Sheriff's homicide has always provided           12:43:37

16  informal discovery.  They don't require a discovery        12:43:44

17  order.  They just automatically give everything to         12:43:46

18  the defense.                                               12:43:48

19     Q      And is there any document of any kind that       12:43:50

20  calls for that?                                            12:43:55

21     A      No document, no.                                 12:43:56

22     Q      And when you say "no document,"                  12:44:15

23  there's never -- there has never been and currently        12:44:17

24  is not such a document; correct?                           12:44:20

25     A      I don't recall ever seeing such a document.      12:44:22

**Ex. 616-96**

**MIKE BUMCROT - December 21, 2016**
**O'CONNELL VS. SMITH**

| | | |
|---|---|---|
| 1 | And was there -- in your experience, was -- | 13:57:51 |
| 2 | would it meet on a particular day of the week?  I | 13:57:59 |
| 3 | mean, weekly or regularly?  Or was there some | 13:58:04 |
| 4 | routine to it? | 13:58:06 |
| 5 | A     There is now.  Back then, it was just | 13:58:08 |
| 6 | whenever a large number of people would be in the | 13:58:12 |
| 7 | office, you would sit down and discuss your cases. | 13:58:14 |
| 8 | Q     And, to your knowledge and based on your | 13:58:23 |
| 9 | experience, did lieutenants normally review any | 13:58:30 |
| 10 | document associated with the investigation other | 13:58:37 |
| 11 | than the police report drafted by the investigators? | 13:58:40 |
| 12 | MR. GONZALES:  Lack of foundation. | 13:58:43 |
| 13 | Speculative. | 13:58:45 |
| 14 | Go ahead. | 13:58:45 |
| 15 | THE WITNESS:  I have seen that happen. | 13:58:46 |
| 16 | BY MR. LITT: | 13:58:49 |
| 17 | Q     When you say you've seen that happen, was | 13:58:50 |
| 18 | that the norm, or was that an exception? | 13:58:52 |
| 19 | A     Probably an exception. | 13:58:55 |
| 20 | Q     So, in your experience, normally the only | 13:58:58 |
| 21 | documents that the lieutenants saw were the -- was | 13:59:01 |
| 22 | the police report? | 13:59:04 |
| 23 | A     Yes. | 13:59:07 |
| 24 | Q     Was there any document ins- -- of your -- | 13:59:12 |
| 25 | which you're aware, instructing lieutenants to | 13:59:16 |

**Ex. 616-109**

**MIKE BUMCROT - December 21, 2016**
**O'CONNELL VS. SMITH**

| | | |
|---|---|---|
| 1 | review an investigation to ensure that the Brady | 13:59:21 |
| 2 | obligations had been met? | 13:59:26 |
| 3 | MR. GONZALES:  Lack of foundation. | 13:59:29 |
| 4 | Speculative. | 13:59:30 |
| 5 | Go ahead and answer. | 13:59:32 |
| 6 | THE WITNESS:  None that I'm aware of. | 13:59:32 |
| 7 | BY MR. LITT: | 13:59:41 |
| 8 | Q    And that's true in the early '80s and still | 13:59:41 |
| 9 | true today; is that right? | 13:59:45 |
| 10 | A    Yes. | 13:59:48 |
| 11 | Q    In the early '80s, was there any document | 14:00:06 |
| 12 | addressing the issue of how investigators would call | 14:00:15 |
| 13 | the attention of a district attorney to Brady | 14:00:26 |
| 14 | information? | 14:00:32 |
| 15 | A    Nothing in writing that I saw. | 14:00:32 |
| 16 | Q    Was there ever -- did you personally ever | 14:00:50 |
| 17 | have training on that issue? | 14:00:52 |
| 18 | MR. GONZALES:  Irrelevant. | 14:00:56 |
| 19 | Go ahead. | 14:00:57 |
| 20 | THE WITNESS:  On which issue? | 14:00:57 |
| 21 | BY MR. LITT: | 14:00:59 |
| 22 | Q    On the issue of how to call the attention | 14:01:00 |
| 23 | of the prosecutor or the district attorney to Brady | 14:01:06 |
| 24 | information. | 14:01:10 |
| 25 | A    Only on-the-job training when I first | 14:01:11 |

**LUDWIG KLEIN REPORTERS & VIDEO, INC. - 800.540.0681**          110

**Ex. 616-110**

**MIKE BUMCROT - December 21, 2016**
**O'CONNELL VS. SMITH**

```
 1   accurate representation of what occurred?          14:09:03

 2       A    That's fair to say.                        14:09:07

 3       Q    So I'm going to represent to you that the  14:09:53

 4   lieutenant supervising this investigation was       14:09:57

 5   deposed.  That lieutenant is now retired.  And I'm  14:10:00

 6   going to read to you some testimony, and then I'm   14:10:10

 7   going ask you some questions about the testimony.   14:10:13

 8            So the testimony is:                       14:10:16

 9            "Are you familiar with the US Supreme      14:10:20

10   Court's case in Brady versus Maryland?"             14:10:23

11            Answer:  "No."                             14:10:28

12            Question:  "Are you familiar with the term 14:10:29

13   called 'the Brady rule'?"                           14:10:31

14            Answer:  "No."                             14:10:32

15            Question:  "Are you familiar with the rule 14:10:33

16   that prosecution, that it's a violation of due      14:10:36

17   process for the prosecution to suppress evidence    14:10:39

18   this is favorable to the accused?"                  14:10:44

19            Answer:  "No."                             14:10:46

20            And later on:  "As you sit here today, do  14:10:52

21   you have any understanding of what the Brady rule   14:10:55

22   means?"                                             14:10:57

23            "No, unless not in" -- this is the         14:11:02

24   answer -- "before today or after today?"            14:11:04

25            "Before today."                            14:11:05
```

**Ex. 616-116**

**MIKE BUMCROT - December 21, 2016**
**O'CONNELL VS. SMITH**

1     Answer:  "No."                                              14:11:08

2            With those answers in mind, is there any            14:11:12

3     formal training that was required for police               14:11:14

4     lieutenants or homicide investigators that would           14:11:19

5     indicate that these answers contradict any formal          14:11:26

6     policy of the sheriff's department?                        14:11:32

7            MR. GONZALES:  Lack of foundation.                  14:11:35

8     Speculative.                                               14:11:37

9            You may answer.                                     14:11:38

10           THE WITNESS:  Well, all I can say is that           14:11:39

11    lieutenants are not detectives.  Lieutenants are           14:11:43

12    managers.  And the fact that this lieutenant,              14:11:45

13    whoever it was, absolutely knew nothing of Brady           14:11:48

14    does not -- I believe that that's true, that some          14:11:53

15    lieutenants are not aware.                                 14:11:59

16    BY MR. LITT:                                               14:12:01

17        Q    So you believe that some lieutenants are         14:12:01

18    not aware of Brady?                                        14:12:04

19        A    I believe so, yes.                                14:12:06

20        Q    Did -- and was there anything that put           14:12:12

21    lieutenants into the rotation for homicide school as       14:12:17

22    for any -- as for members of the homicide teams?          14:12:22

23        A    Only since the newer homicide school run by       14:12:25

24    the sheriff's department and LAPD do the lieutenants       14:12:29

25    go to homicide school.                                     14:12:32

**MIKE BUMCROT - December 21, 2016**
**O'CONNELL VS. SMITH**

1      Q      In order to become a homicide lieutenant,      14:12:37
2  was there anything that required that they have and    14:12:44
3  understand the basic skills and obligations of a    14:12:51
4  homicide detective?    14:12:54
5         MR. GONZALES:   Foundation.   And    14:12:56
6  speculative.    14:12:57
7  BY MR. LITT:    14:12:57
8      Q      In the early '80s?    14:12:58
9      A      In the early '80s, most of the homicide    14:12:59
10  lieutenants were just lieutenants, meaning managers    14:13:02
11  in other bureaus within the department.   They had    14:13:09
12  never been homicide detectives.    14:13:12
13      Q      Well, whether they had been homicide    14:13:16
14  detectives or not, was there anything that ensured    14:13:19
15  that they would have the -- an understanding of the    14:13:22
16  duties, responsibilities, and obligations of a    14:13:30
17  homicide detective?    14:13:34
18         MR. GONZALES:   The same objections.    14:13:35
19         THE WITNESS:   Only by their experience of    14:13:37
20  supervising homicide investigators and reading the    14:13:39
21  training material provided by the DA's office or    14:13:43
22  other agencies.    14:13:46
23  BY MR. LITT:    14:13:50
24      Q    And that was totally whether they took the    14:13:50
25  individual initiative to do that; correct?    14:13:54

**LUDWIG KLEIN REPORTERS & VIDEO, INC. - 800.540.0681**        118

**Ex. 616-118**

**MIKE BUMCROT - December 21, 2016**
**O'CONNELL VS. SMITH**

| | | | |
|---|---|---|---|
| 1 | | says "AOT(D)." | 14:30:42 |
| 2 | | Do you see that beneath? | 14:30:48 |
| 3 | A | I do see that. | 14:30:49 |
| 4 | Q | What does "AOT" refer to?  Do you know? | 14:30:51 |
| 5 | A | Advanced officer training. | 14:30:53 |
| 6 | Q | And "Technical School (Outside)," that | 14:31:01 |
| 7 | | means outside the department? | 14:31:06 |
| 8 | A | Yes. | 14:31:07 |
| 9 | | Can I stop you there? | 14:31:15 |
| 10 | Q | Sure. | 14:31:16 |
| 11 | A | I don't believe that is JD Smith's. | 14:31:17 |
| 12 | | MR. GONZALES:  Right. | 14:31:17 |
| 13 | | THE WITNESS:  JD Smith is down at the | 14:31:17 |
| 14 | | bottom. | 14:31:18 |
| 15 | | If you can see there, that's the -- | 14:31:20 |
| 16 | | BY MR. LITT: | 14:31:22 |
| 17 | Q | Oh, you're right. | 14:31:22 |
| 18 | A | Oh, okay. | 14:31:23 |
| 19 | Q | We still have the AOT.  So -- | 14:31:28 |
| 20 | | Now, there's a reference to -- all right. | 14:31:36 |
| 21 | | So where we have JD Smith. | 14:31:42 |
| 22 | | So underneath where it says it, it gives | 14:31:47 |
| 23 | | some information about him; right? | 14:31:53 |
| 24 | A | Yes. | 14:31:54 |
| 25 | Q | So it has a hire date, which is -- we'll | 14:31:55 |

**Ex. 616-129**

**MIKE BUMCROT - December 21, 2016**
**O'CONNELL VS. SMITH**

1    just use the year -- 1966; correct?                    14:32:00

2        A    Yes.                                          14:32:04

3        Q    And a promotion date in 1971; correct?       14:32:05

4        A    Yes.                                          14:32:08

5        Q    And a date of degree, 1980.                   14:32:09

6             Do you know what that refers to?              14:32:16

7        A    It says he has a master's degree.             14:32:19

8        Q    And that's in public administration;          14:32:26

9    correct?                                               14:32:28

10       A    Yes.                                          14:32:28

11       Q    And then it -- it refers to POST             14:32:28

12   certificate.                                           14:32:35

13            And that's in 1974; correct?                  14:32:35

14       A    His intermediate was in '74.  His advanced    14:32:38

15   was '76.                                               14:32:43

16       Q    And what's the difference between             14:32:45

17   intermediate and advanced, as you understand it?       14:32:46

18       A    You have to go through certain training       14:32:47

19   and years on the department to advance.                14:32:50

20       Q    And those -- have you taken those courses?    14:33:02

21       A    Yes.                                          14:33:09

22       Q    Did those courses address Brady at all?       14:33:11

23       A    Well, those courses are just your             14:33:16

24   experience on the department, how many years, and      14:33:20

25   the different training things that you've gone          14:33:24

**Ex. 616-130**

**MIKE BUMCROT - December 21, 2016**
**O'CONNELL VS. SMITH**

1    through on the department.                                14:33:27

2              So, like I've said several times, I don't      14:33:29

3    know of any actual Brady training.                       14:33:32

4         Q    Okay.  So, then, beneath that, it says --      14:33:35

5    under "AOT," it says "DBAOT."                             14:33:52

6              Do you know what the "DB" means?               14:33:58

7         A    Detective bureau.                              14:34:01

8         Q    Okay.  And then it says, "24 hours, basic."    14:34:02

9              What does that refer to?                       14:34:06

10        A    That he went through the basic detective       14:34:07

11   school.                                                  14:34:09

12        Q    When you say "the basic detective school,"     14:34:14

13   is that different from -- I take it that's different     14:34:17

14   from the DOJ detective school that you talked about?     14:34:20

15        A    Yes.                                           14:34:23

16        Q    So this was, like -- and do you know what      14:34:24

17   the basic -- what that was?                              14:34:35

18        A    It's just for new detectives.  They go         14:34:40

19   through a three-day class.                               14:34:42

20        Q    Now, can you tell from this document           14:34:44

21   anywhere where JD Smith -- when JD Smith became a        14:34:56

22   homicide detective?                                      14:35:06

23              MR. GONZALES:  Let the record reflect that    14:35:16

24   Exhibit 426-1, the very last line, looks like it's       14:35:17

25   cut off.  I don't know if that is incomplete or is a     14:35:21

**MIKE BUMCROT - December 21, 2016**
**O'CONNELL VS. SMITH**

| | | |
|---|---|---|
| 1 | pickup on the following page.  Maybe you know. | 14:35:26 |
| 2 | MR. LITT:  I will double-check it before we | 14:35:28 |
| 3 | complete this.  I think that it's -- this captured | 14:35:31 |
| 4 | it all, but I'll make sure.  Because we certainly | 14:35:34 |
| 5 | don't want to have anything left out. | 14:35:37 |
| 6 | THE WITNESS:  I don't -- I don't see | 14:35:41 |
| 7 | anything on here on his transfer to homicide. | 14:35:42 |
| 8 | BY MR. LITT: | 14:35:46 |
| 9 | Q    Okay.  Well, I will represent to you that | 14:35:47 |
| 10 | he was in homicide -- I forget the year, but | 14:35:51 |
| 11 | certainly by 1983 and earlier. | 14:35:56 |
| 12 | So -- and the reason I'm raising that is it | 14:36:00 |
| 13 | appears he took the basic homicide school in 1986. | 14:36:05 |
| 14 | Is that right? | 14:36:10 |
| 15 | A    Well, the -- the detective school.  Whether | 14:36:13 |
| 16 | it was the -- | 14:36:18 |
| 17 | Q    The detective school. | 14:36:18 |
| 18 | A    -- homicide school, I don't know. | 14:36:19 |
| 19 | Q    The detective school. | 14:36:20 |
| 20 | Is that something -- if he had taken that | 14:36:24 |
| 21 | course earlier, should that be reflected on this | 14:36:28 |
| 22 | report? | 14:36:33 |
| 23 | A    Well, I'm sure the dates are accurate for | 14:36:36 |
| 24 | when he attended detective school. | 14:36:39 |
| 25 | Q    Right.  My question's a little different. | 14:36:42 |

**MIKE BUMCROT - December 21, 2016**
**O'CONNELL VS. SMITH**

| | | |
|---|---|---|
| 1 | If he had taken -- I can't tell -- but I | 14:36:45 |
| 2 | don't know very much -- since this is -- since he | 14:36:51 |
| 3 | did this course in 1986, whether or not this is the | 14:36:57 |
| 4 | first time he took the course or not. | 14:37:07 |
| 5 | And so my question is:  If he had taken a | 14:37:10 |
| 6 | course previously, would it be reflected on this | 14:37:12 |
| 7 | report? | 14:37:19 |
| 8 | A    Yes. | 14:37:20 |
| 9 | Q    And it then says beneath that -- or next to | 14:37:29 |
| 10 | that, "820 hours, 3/24/67." | 14:37:36 |
| 11 | Do you see what -- do you see that? | 14:37:42 |
| 12 | A    Yes. | 14:37:44 |
| 13 | Q    Do you know what that refers to? | 14:37:44 |
| 14 | A    I believe that's how many hours the academy | 14:37:46 |
| 15 | is.  He got a basic POST on that date. | 14:37:48 |
| 16 | Q    All right.  And then to the right of that, | 14:37:57 |
| 17 | under "Other Training," it says "PDS," I think, "LE, | 14:37:58 |
| 18 | 16 hours." | 14:38:06 |
| 19 | You see that? | 14:38:07 |
| 20 | A    Yes. | 14:38:07 |
| 21 | Q    Do you know what that refers to? | 14:38:08 |
| 22 | A    I think it's "POS."  I think it's positive | 14:38:09 |
| 23 | thinking for -- | 14:38:13 |
| 24 | Q    Okay. | 14:38:13 |
| 25 | A    -- law enforcement, a class that they had. | 14:38:13 |

**Ex. 616-133**

```
 1                    WITNESS'S CERTIFICATE

 2

 3

 4

 5           I am the witness in the foregoing

 6  deposition.  I have read the foregoing deposition

 7  and having made such changes and corrections as I

 8  desire, I certify that the same is true of my own

 9  knowledge, except as to those matters which are

10  therein stated upon my information or belief, and as

11  to those matters, I believe it to be true.

12           I declare under penalty of perjury under

13  the laws of the state of California that the

14  foregoing is true and correct.

15           Executed on _____,

16  at _____.

17

18

19
                     _____
20                          MIKE BUMCROT

21

22

23

24

25
```

1                    REPORTER'S CERTIFICATE

2

3

4              I, Jean Kim, CSR No. 13555, RPR, a

5    Certified Shorthand Reporter in and for the State of

6    California, do hereby certify:

7              That prior to being examined, the witness

8    named in the foregoing proceedings declared under

9    penalty of perjury to testify to the truth, the

10   whole truth, and nothing but the truth;

11             That said proceedings were taken by me in

12   shorthand at the time and place herein named and was

13   thereafter transcribed into typewriting under my

14   direction, said transcript being a true and correct

15   transcription of my shorthand notes;

16             Pursuant to Federal Rule 30(e),

17   transcript review was requested;

18             I further certify that I have no interest

19   in the outcome of this action.

20                                   January 6, 2017

21

22

23

24             _____

                         JEAN KIM
25                       CSR No. 13555

Ex. 616-152